## THE LAURA.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued January 30, 1885.—Decided April 13, 1885.

A remission by the Secretary of the Treasury, under Rev. Stat. § 5294, of penalties incurred by a steam-vessel for taking on board an unlawful number of passengers, is effectual to destroy all liability in the suit, where the remission is applied for before a suit *in rem*, brought for the penalties against the vessel by an informer, is tried.

The practice of granting remissions of pecuniary penalties and forfeitures, by officers other than the President, sanctioned by statute and acquiescence for nearly a century, as a valid exercise of authority, and no invasion of the power of pardon granted by the Constitution to the President, is too firmly established to be questioned.

This was a libel filed by Norman H. Pollock against the Steamboat Laura, &c., to recover penalties for the violation of Rev. Stat. § 4465  The facts which make the case are stated in the opinion of the court. The libel was dismissed in the District Court. An appeal was taken to the Circuit Court, where it was again dismissed. The libellant appealed to this court.

*Mr. Henry G. Atwater* for appellant.

*Mr. Dennis McMahon* for claimant and appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

The statutes regulating the transportation of passengers by steam vessels on such of the waters of the United States as are common highways of commerce, or are open to general or competitive navigation—other than public vessels of this country, vessels of other countries, and canal-boats propelled in whole or in part by steam—provide that every certificate of inspection granted to steamers carrying passengers, other than ferry-boats, shall show the number of passengers of each class for whom the steamer has accommodation, and whom it can carry with prudence and safety ; that it shall not be lawful to

take on board a greater number of passengers than is stated in the certificate of inspection; and that "for every violation of this provision the master or owner shall be liable, to any person suing for the same, to forfeit the amount of passage money and ten dollars for each passenger beyond the number allowed." Rev. Stat. §§ 4399, 4400, 4464, 4465; Act of Feb. 28, 1871, 16 Stat. 440, 454. These penalties are declared to be a lien upon the offending vessel. § 4469. Another section in the same Title provides: "If any vessel propelled in whole or in part by steam be navigated without complying with the terms of this Title, the owner shall be liable to the United States in a penalty of $500 for each offence, one-half for the use of the informer; for which sum the vessel so navigated shall be liable, and may be seized and proceeded against by way of libel in any District Court of the United States having jurisdiction of the offence." § 4499

The libel in this case was filed by the appellant to enforce a lien, in his favor, upon a steam vessel of the class to which the above regulations apply, for penalties amounting to the sum of $5,661; which, it is claimed, accrued to the appellant, as the person suing for them by reason of the transportation, on that vessel, at certain specified times, of a larger number of passengers than its certificate of inspection permitted.

Before the trial in the District Court, the owner of the vessel, a corporation which had intervened, filed an amended answer, setting up in bar of the further prosecution of the suit, a warrant in due form by the Secretary of the Treasury, remitting to the appellee, "all the right, claim, and demand of the United States, and of all others whatsoever, to said forfeiture of passage money and penalties, on payment of costs, if any there be."

The provision of the statute under which this warrant of remission was issued is in these words:

"The Secretary of the Treasury may, upon application therefor, remit or mitigate any fine or penalty provided for in laws relating to steam vessels, or discontinue any prosecution to recover penalties denounced in such laws, excepting the penalty of imprisonment, or of removal from office, upon such

terms as he, in his discretion, shall think proper; and all rights granted to informers by such laws shall be held subject to the Secretary's power of remission, except in cases where the claims of any informer to the share of any penalty shall have been determined by a court of competent jurisdiction, prior to the application for the remission of the penalty; and the Secretary shall have authority to ascertain the facts upon all such applications, in such manner and under such regulations, as he may deem proper." Rev. Stat. § 5294.

The costs having been taxed and paid into court, the libel was, by order of the court, dismissed. *Pollock* v. *Steamboat Laura*, 5 Fed. Rep. 133. Upon appeal to the Circuit Court, the decree was affirmed, that court concurring with the District Court in holding that the remission by the Secretary of the Treasury discharged all liability for the penalties. *The Laura*, 14 Blatchford, 562.

The warrant of remission, it is contended by the libellant, is without legal effect, and should have been disregarded, because the statute upon which it rests is in conflict with the clause of the Constitution investing the President with power "to grant reprieves and pardons for all offences against the United States, except in cases of impeachment." The argument advanced in support of this position, briefly stated, is: That the power of the President to grant pardons includes the power to remit fines, penalties, and forfeitures imposed for the commission of offences against, or for the violation of the laws of, the United States; that such power is in its nature exclusive; and that its exercise, in whatever form, by any subordinate officer of the government, is an encroachment upon the constitutional prerogatives of the President.

It is not necessary to question the soundness of some of these propositions. It may be conceded that, except in cases of impeachment and where fines are imposed by a co-ordinate department of the government for contempt of its authority, the President, under the general, unqualified grant of power to pardon offences against the United States, may remit fines, penalties, and forfeitures of every description arising under the

laws of Congress; and, equally, that his constitutional power in these, respects cannot be interrupted, abridged, or limited by any legislative enactment. But is that power exclusive, in the sense that no other officer can remit forfeitures or penalties incurred for the violation of the laws of the United States? This question cannot be answered in the affirmative without adjudging that the practice in reference to remissions by the Secretary of the Treasury and other officers, which has been observed and acquiesced in for nearly a century, is forbidden by the Constitution. That practice commenced very shortly after the adoption of that instrument, and was, perhaps, suggested by legislation in England, which, without interfering with, abridging, or restricting the power of pardon belonging to the Crown, invested certain subordinate officers with authority to remit penalties and forfeitures arising from violations of the revenue and customs laws of that country. Stat. 27 Geo. III., ch. 32; see also Stat. 51 Geo. III., ch. 96, and 54 Geo. III., 171.

By an act passed March 3, 1797, 1 Stat. 506, the Secretary of the Treasury was authorized to mitigate or remit any fine, penalty, forfeiture or disability arising from any law providing for the laying, levying or collecting duties or taxes, or any law concerning the registering and recording of ships or vessels, or the enrolling or licensing ships or vessels employed in the coasting trade or fisheries, or regulating the same, if, in his opinion, the same was incurred without wilful negligence, or fraudulent intention by the person or persons subject to the same. He was also authorized to direct a prosecution instituted for the recovery thereof to cease and be discontinued upon such terms and conditions as he deemed reasonable and just. This act expired by limitation at a designated time. But by an act passed February 11, 1800, it was revived to continue in force without limitation as to time. 2 Stat. 7, ch. 6. From the adoption of the Constitution to the present moment, Congress has asserted its right, by statute, to invest the Secretary of the Treasury and other officers of the executive branch of the government with power to remit fines, penalties, and forfeitures imposed for the violation of the laws the of United

States.* And in none of the cases in this court or in the Circuit and District Courts of the United States, involving the operation or effect of such warrants of remission, was it ever suggested or intimated that the legislation was an encroachment upon the President's power of pardon—so far, at least, as it invested the Secretary of the Treasury, or other officers, with authority to remit pecuniary penalties and forfeitures. Indeed, the case of *United States* v. *Morris,* 10 Wheat. 246, may be regarded as a direct adjudication in favor of the validity of that part of the act of 1797, brought forward in all of the subsequent statutes upon the same subject, which confers upon the Secretary the power to remit fines, penalties, and forfeitures.

In that case—which involved the right to a share in a forfeiture declared by statute—the question related to the power of the Secretary under that act, after final sentence of condemnation and judgment for the forfeiture accruing under the revenue laws, to remit the forfeiture. The court held that the power could be exercised, under that act, at any time before the money was actually paid over to the collector for distribution. It was said: " The authority of the Secretary to remit, at any time *before* condemnation of the property seized, is not denied on the part of the plaintiff [the officer claiming the forfeiture]; and it cannot be maintained that Congress has not the power to vest in this officer authority to remit *after* condemnation; and the only inquiry would seem to be, whether this has been done by the act referred to." Evidently the court and the eminent counsel who appeared in that case, accepted it as a proposition not open to discussion, that the power of the President to pardon for offences did not preclude Congress from giving the Secretary of the Treasury authority to remit penalties and

---

* *Note by the Court.*—1 Stat. 122, ch. 12; Ib. 275, ch. 35; 2 Ib. 454, ch. 8, § 6; Ib. 502, ch. 66, § 14; Ib. 510, ch. 5, § 12; Ib. 701, ch. 49, § 4; 3 Ib. 92, ch. 1, § 14; Ib. 617, ch. 14, § 3; Ib. 739, ch. 21, § 35; 9 Ib. 593, ch. 21, § 3; 11 Ib. 95, ch. 159, § 10; 12 Ib. 257, ch. 3, § 8; Ib. 271, ch. 10, § 3; Ib. 405, ch. 81, § 4; Ib. 737, 739, ch. 76, § 1; 13 Ib. 198, ch. 164, § 8; 14 Ib. 169, ch. 184, § 63; 15 Ib. 242, ch. 273, § 8; 16 Ib. 179, ch. 185, § 9; 17 Ib. 325, ch. 335, § 316; 18 Ib. 190, ch. 391, § 18; R. S. §§ 2858, 3001, 3078, 3115, 3220, 3412 (2d. ed.), 3461 and 5292–4.

forfeitures. Touching the objection now raised as to the con
stitutionality of the legislation in question, it is sufficient to
say, as was said in an early case, that the practice and acquies-
cence under it, " commencing with the organization of the judi-
cial system, affords an irresistible answer, and has indeed fixed
the construction: It is a contemporary interpretation of the
most forcible nature. This practical exposition is too strong
and obstinate to be shaken or controlled. Of course, the ques-
tion is at rest, and ought not now to be disturbed." *Stuart* v.
*Laird*, 1 Cranch, 299, 308. The same principle was announced
in the recent case of *Lithographic Co.* v. *Sarony*, 111 U. S. 53,
57, where a question arose as to the constitutionality of certain
statutory provisions reproduced from some of the earliest stat-
utes enacted by Congress. The court said : " The construc-
tion placed upon the Constitution by the first act of 1790, and
the act of 1802, by the men who were contemporary with its
formation, many of whom were members of the convention
which framed it, is, of itself, entitled to very great weight ; and
when it is remembered that the rights thus established have not
been disputed during a period of nearly a century, it is con-
clusive." See also *Cooley* v. *Board of Wardens*, 12 How. 299,
315 ; *Martin* v. *Hunter*, 1 Wheat. 304 ; *Cohens* v. *Virginia*, 6
Wheat. 264.

It is, however, insisted that if the statute in question is con-
stitutional, it cannot be construed as giving the Secretary of
the Treasury the power to remit a penalty after a suit for its
recovery has been instituted by a private person. In support
of this position we are referred to numerous authorities, which,
it is claimed, hold that the test of what may be done under the
power of pardon granted by our Constitution is, what the King
of England could do, by virtue of his pardoning power, at the
time of the separation from that country ; and that he could not
grant a pardon to the injury of a subject, and, therefore, could not
remit a penalty after suit by a private person to recover it. It
is quite true, as declared in *United States* v. *Wilson*, 7 Pet. 150,
160, that, since the power to pardon " had been exercised from
time immemorial by the executive of that nation whose lan-
guage is our language, and to whose judicial institutions ours

have a close resemblance, we adopt their principles respecting the operation and effect of a pardon." But that principle has no possible application to the present case; for, the statute under which the libellant proceeds, and without which he would have no standing in court, declares, in terms, that "all rights granted to informers"—and the libellant is plainly of the class intended to be described—shall be held "subject to the Secretary's power of remission, except in cases where the claims of any informer to the share of any penalty shall have been determined by a court of competent jurisdiction prior to the application for the remission of the penalty." If the libellant had, by virtue of his suit, an inchoate interest in such penalties, that interest was acquired subject to the power of the Secretary to destroy it by a remission applied for before the right is ascertained and established by the judgment of the proper court.

The decree below is

*Affirmed.*