ROBERTS H. DOWNS, Plaintiff, *v.* SANTIAGO PORRATA DORIA, PROSECUTING ATTORNEY OF THE SUPERIOR COURT, ARECIBO PART, Respondent.

No. 472. Argued June 1, 1953.—Decided May 25, 1954.

*Santos P. Amadeo* and *Antonio Guzmán Juarbe,* for plaintiff.
*José Trías Monge, Attorney General,* and *A. Torres Braschi, Assistant Attorney General,* for respondent.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On November 29, 1951 the Prosecuting Attorney of the former District Court of Puerto Rico, Arecibo Section, filed an information against Mr. Robert H. Downs, a member of the Armed Forces of the United States of America, for a violation of §§ 7 and 29 of Act No. 17 to regulate the possession, carrying, sale and use of weapons in Puerto Rico, approved on January 19, 1951 (Spec. Sess. Laws, p. 426). When he was arrested, his motorcycle which was presumptively employed in the illegal transportation of the weapon, was seized. The plaintiff was found guilty of the violations of the Act charged and sentenced to serve six months in jail in each one of the cases.

On September 17, 1952, the Hon. Governor of Puerto Rico, granted plaintiff "an absolute, full and unconditional pardon, of the offenses for which he was convicted and of any other imprisonment sentence left unserved under the aforesaid judgments, as well as of any other consequent penalties pursuant to the law, and I hereby restore him to all the civil rights and prerogatives which he formerly possessed and of which he was deprived by the aforesaid convictions and judgments."

After being pardoned, plaintiff requested from the Prosecuting Attorney of the Superior Court of Puerto Rico, Arecibo Part, formerly District Court of Puerto Rico, Arecibo Section, the surrender of the motorcycle seized, which that official refused. This proceeding was filed in this Court to compel the officer to surrender to plaintiff the motorcycle seized.

The only question for decision here is the effect of an absolute, full and unconditional pardon on any seized or forfeited properties employed in the commission of the pardoned offense.

 The royal prerogative of the Crown of England of granting amnesties, pardons, restoration of property and

other condonations to the subjects of the Crown, became in American constitutional law the power of the President of the United States "to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment": —Article II, § 2 of the Constitution of the United States of America.

Section 17 of the Organic Act of Puerto Rico of April 12, 1900 vested in the Governor of Puerto Rico the power to grant pardons and reprieves, and remit fines and forfeitures for offenses against the laws of Puerto Rico, and respites for offenses against the laws of the United States, until the decision of the President could be ascertained. Section 12 of the Organic Act of Puerto Rico of March 2, 1917 provided likewise.

When the Constitutional Convention of Puerto Rico met to draft the Constitution of the Commonwealth of Puerto Rico, the report of the Executive Branch Committee contained substantially the same principles laid down in the two former Organic Acts. The debate of the Constitutional Convention which took place on January 9, 1952 with respect to the executive grace under study, lasted a few minutes. See: Diary of Sessions of the Constitutional Convention of Puerto Rico, p. 659. Those principles were consecrated in Article IV, Section 4 of the Constitution of the Commonwealth which vests in the Governor of Puerto Rico the power "to suspend the execution of sentences in criminal cases and to grant pardons, commutations of punishment, and *total or partial remissions of fines and forfeitures for crimes committed* in violation of the laws of Puerto Rico," except in cases of impeachment.

The juridical anatomy of this Section leads us to conclude that we are before one of the few monarchical powers recognized by democracy. By analogy the bare constitutional power provided by § 2 of Article II of the Constitution to the President of the United States of America grant-

ing him "Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment," was enriched by the traditional significance of the royal prerogative of the Crown of England since it had been ". . . exercised from time immemorial by the executive of that nation whose language is our language, and to whose judicial institutions, ours bears a close resemblance. We adopt their principles respecting the operation and effect of a pardon, and look into their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it": *The United States* v. *Wilson* 7 Peters 160, 8 L. ed. 640, 643, 644, (Marshall), (1830); See also *Pollock* v. *Bridgeport·Steamboat Co.* 114 U. S. 411, 417, 29 L. ed. 147, 149, (Harlan), (1885).

Upon adopting the former judicial policy of identifying the pardoning power of the President with the royal prerogative of the Crown, insofar as it was not inconsistent with the genius of the new Republic, the following were included within the executive grace: (1) pardon properly speaking, either unconditional or conditional, (2) the partial condonation of the terms of a judgment, (3) the commutation of sentences and (4) the remission of fines, penalties and forfeitures.

The amnesty proclamation granted by President Johnson on December 25, 1868 after the Civil War, allowed the National Supreme Court to develop a jurisprudence which although already classic, has remained unchanged in its doctrinal content. It may be summarized as follows: the executive power to pardon is an absolute power which can not be interrupted, abridged or limited by legislative or judicial enactment, notwithstanding the fact that it is an inherent duty of the executive to see to the faithful compliance with the laws of the Republic; although it is an absolute power, insofar as the executive may exercise it whenever he wishes, following the pattern of the royal prerogative of the Crown

of England, it is not an exclusive power and may be exercised by persons other than the executive himself; that this power may be exercised, subject to legislative control, over everything concerning the remission of fines, penalties and forfeitures by other officers of the State, such as the Secretary of the Treasury, or the Customs Collector; that this power extends, by implication from the historical roots of the royal prerogative, to pardons, to partial condonation of sentences in criminal actions, to the commutation of punishments and the remission of fines, penalties and forfeitures; that as to reprieves, condonation of sentences and commutation of punishments there are only some exceptions to this power and that is in the case of crimes against the United States committed by foreign subjects, in which case a pardon does not prevent deportation, and as to remission of fines, penalties and forfeitures, where the property or money has passed into the hands of third persons by prosecution of judicial proceedings such as forfeiture, or has become part of the national treasury, in which case an Act of Congress would be required, and in case of fines in civil contempt; that as to remission of fines, penalties and forfeitures, when the property or money is still under executive or judicial control, without having become part of the common fund of the national treasury, the pardon grants to the person the restoration of any property used in the commission of the crime or of any money paid as fine, unless such restoration was refused as a condition of the pardon: *Ex Parte A. H. Garland*, 4 *Wallace* 333, 380, 18 L. ed. 366, 370, 371, (Field), (1867); *Armstrong's Foundry* v. *United States*, 6 Wallace 766, 770, 18 L. ed. 882, (Chase), (1868); *Osborn* v. *United States*, 91 U. S. 474, 23 L. ed. 388, 390 (Field) (1876); *Knote* v. *United States*, 95 U. S. 149, 154, 155, 24 L. ed. 442, 443, 444 (Field) (1877); *Pollock* v. *Bridgeport Steamboat Co.*, 114 U. S. 411, 414, 29 L. ed. 147, 148, (Harlan), (1885); *Illinois Central Railroad Co.* v. *Bosworth*, 133 U. S. 92, 105,

33 L. ed. 550, 555, (Bradley), (1890). See also *Biddle* v. *Perovich*, 274 U. S. 480, 486, 487, 71 L. ed. 1161, 1163, 1164 (Holmes), (1927) ; *United States* v. *Wright*, 56 F. Supp. 489, 492 (Lindley), (1944) ; *Lupo* v. *Zerbst*, 92 F. 2d 362, 364, (Holmes), (1937) (certiorari denied in 82 L. ed. 1108) ; *Solesbee* v. *Balkcom*, 339 U. S. 9, 12, 94 L. ed. 604, 607, (Black), (Frankfurter, dissenting), (1950) ; *United States* v. *Tomoya Kawakita*, 108 F. Supp. 627, 632, (Mathes), (1952) ; 23 Am. Jur. 619 (§ 21) and 643 (§ 53) ; 39 Am. Jur. 533, (§ 26).

We need only examine Article IV, § 2 of the Constitution of the Commonwealth of Puerto Rico to realize that each and every word in that Article embodies the traditional concepts clarified by the classical jurisprudence. Hence, we now establish as the local rule for the forfeiture of property employed as an instrument or means for the commission of an offense proscribed by the criminal laws of Puerto Rico, that any unconditional pardon of the Governor of Puerto Rico implies the obligation of any executive or judicial officer to return the thing forfeited, unless by virtue of a forfeiture proceeding, established by the same law ordering the forfeiture, the thing forfeited has been legally vested in third persons, or when the thing is actually sold pursuant to the proceeding fixed by law, and reduced to money and the money is turned into the treasury according to the law and to the administrative regulations applicable to the case. If the money has not been turned into the common fund of the treasury it must be returned to the person pardoned, as well as when fine or penalty is involved, or in the case of proceeds from a sale, by forfeiture, unless the pardon is not so conditioned.

 As his sole defense in this case the respondent urges that we apply to the case of unconditional pardon, in everything concerning the forfeiture of property, the theory of the guilt on the thing and that we declare that since the

condemnation proceeding is one *in rem*, directed to the vehicle itself and not to its owner, pardon granted to the owner does not reach the thing. Although § 37 of the Weapons Act of Puerto Rico, as amended by Act No. 397 of May 10, 1951 (Sess. Laws, p. 992) provides for a proceeding for the confiscation of any property whenever a public peace officer surprises any person in the act of transporting on any mount or vehicle any weapon in violation of the Act, undoubtedly the legislative provision may in no way limit, abridge or regulate the pardoning power of the executive, which includes the power to remit fines, penalties and forfeitures.

The sometimes useful fiction that the guilt may fall on the thing serving as instrument for the commission of an offense, excluding the criminal will which directs it, does not have an absolute value on which the decision of the instant case must depend. The nature of an *in rem* or *in personam* proceeding depends for its utility on the aim of the statute. Sometimes an Act, as happens in § 34 of the Weapons Act of Puerto Rico, as amended by Act No. 129 of April 22, 1952 (Sess. Laws, p. 252) declares certain instruments a public nuisance, which because of their extreme danger to the State, are ministerially forfeited as soon as seized, for possible legal use by the State or for definite destruction. At other times, as in § 37 of the same law, as amended by Act No. 397 of May 10, 1951, it merely provides for the seizure of certain instruments, which although they may be employed for lawful purposes, become unlawful instruments because of the use given to them by the offender. In the first case, the confiscation is automatic and the title passes directly to the State, and the judicial declaration of guilt automatically entails the forfeiture of the thing without taking into consideration any interests other than those of the State. In the second case the confiscation has to be made by judicial declaration after proving

(1) the unlawful use of a thing and (2) the knowledge of the interested parties of such unlawful use. The title does not pass to the State or to the person who acquires it in the judicial sale until there is a judicial declaration and the public auction has been accomplished. We must not look to the nature of the action, but to the true purpose of the statute, in confronting a situation like the one herein.

We are not dealing here with a thing of extreme danger which has been legislatively declared a public nuisance. We agree with defendant that a pardon does not reach the remission of property which could cause injury to the State. But when it is the case, as here, of useful property, which may be employed for a lawful purpose, such as vehicles and mounts, where the law also recognizes the right of innocent persons to claim the thing, the practical effect of the pardon is, that on blotting out the person's guilt, the confiscated property automatically becomes innocent property which can be returned to its owner, since the guilt of the owner is what makes it an unlawful instrument or means for the commission of an offense. At any rate the executive would always have the opportunity to set forth in the pardon itself, as a condition to be fulfilled by the person pardoned, the disposition of any property connected with the commission of the offense.

The "Motion to dismiss or in the alternative to render summary judgment in favor of the defendant," filed by the defendant in the instant case should be dismissed.

Mr. Chief Justice Snyder and Mr. Justice Sifre concur in the result.