**UNITED STATES of America**

**v.**

**ONE PIECE OF REAL ESTATE, DESCRIBED IN PART AS: 1314 WHITEROCK AND IMPROVEMENTS, SAN ANTONIO, BEXAR COUNTY, TEXAS.**

**UNITED STATES of America**

**v.**

**FOUR PIECES OF REAL PROPERTY DESCRIBED IN PART AS: 7407 FIELDGATE, SAN ANTONIO, BEXAR COUNTY, TEXAS, 1925 SOUTHEAST LOOP 1604, BEXAR COUNTY, TEXAS, 3107 FIDELIA, BEXAR COUNTY, TEXAS, AND 12.34 ACRES, WILSON COUNTY, TEXAS.**

**UNITED STATES of America**

**v.**

**TWO TRACTS OF REAL PROPERTY DESCRIBED IN PART AS: 5908 CASTLE HUNT AND IMPROVEMENTS, SAN ANTONIO, BEXAR COUNTY, TEXAS, AND 4.097 ACRES AND IMPROVEMENTS, KENDALL COUNTY, TEXAS.**

Civ. A. Nos. SA–82–CA–845 to SA–82–CA–847.

United States District Court, W.D. Texas, San Antonio Division.

Aug. 3, 1983.

Robert Michael Duffey, Asst. U.S. Atty., San Antonio, Tex., for plaintiff.

Terry Topham, San Antonio, Tex., for The Lomas and Nettleton Co.

Kevin H. George, Eikenburg & Stiles, Houston, Tex., for First Mortgage Co. of America.

John M. O'Connell, San Antonio, Tex., for Loper Mortgage Co.

John M. Pinckney III, San Antonio, Tex., for Fleet Mortgage Corp.

Hollon & Marion, Boerne, Tex., for B. Rush and Nancy Jolly.

Richard D. Woods, San Antonio, Tex., for intervenors Leonor Viagran and Martin Guerra.

## ORDER DENYING LIENHOLDERS POST–SEIZURE CHARGES

SUTTLE, Senior District Judge.

In these consolidated forfeiture actions, the government seeks to have various parcels of real property forfeited from their legal owners because the parcels were purchased with proceeds from unlawful drug transactions. Several institutional lienholders have filed claims, seeking to recover unpaid principal, as well as post-seizure interest and other charges permitted by their notes.

The Lomas & Nettleton Company ("L & N") is the holder of a promissory note secured by a deed of trust on 1314 Whiterock, Bexar County, Texas, in Cause No. SA–82–CA–845. L & N seeks to recover $40,583.28 in unpaid principal, as well as unpaid post-seizure interest at the rate of $9.58 per day between January 1, 1983, and the date of sale, plus attorney's fees. L & N has stipulated that no unpaid interest accumulated before the date of seizure.

Fleet Mortgage Company ("Fleet") is the holder of a promissory note secured by a deed of trust on 5908 Castle Hunt, Bexar County, Texas, in Cause No. SA–82–CA–847. Fleet seeks to recover $36,028.32 in unpaid principal, as well as $1,200.94 in unpaid interest accruing between January 1 and May 1, 1983, $9.87 per day in interest thereafter until the date of sale, $77.63 in escrow shortage, $51.72 in uncollected late charges, and attorney's fees.[1] Fleet has stipulated that no unpaid interest accumulated before the date of seizure.

The government contends that the lienholders are entitled to their unpaid principal and any unpaid interest charges that might have accrued up to the date of the seizures of the respective parcels. However, the government contends that the lienholders are not entitled to any post-seizure interest, attorney's fees, or other charges that may be permitted under the notes. The issue of the lienholders' entitlement to post-seizure interest and other charges has been submitted to the Court. For the following reasons, the Court sustains the government's position.

Historically, the remedy of the innocent holder of a lien interest in property forfeited under Section 881 and other statutes has been to petition the Attorney General of the United States for remission or mitigation, an act of executive clemency. Thus, although innocent lienholders could not prevent forfeiture of their interests, they could request an administrative determination that certain properties be returned or a portion of the proceeds of sale be paid to them. See generally 28 C.F.R. Part 9.

In 1978 Congress amended 21 U.S.C. § 881 by adding Subsection (a)(6), which provides in part that all things of value furnished in exchange for a controlled substance and all proceeds traceable to such an exchange are "subject to forfeiture to the United States and no property right shall exist in them ... except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

---

1. In its brief, Fleet has requested leave of Court to amend its claim to seek recovery of its attorney's fees. Such leave is granted.

This amendment altered the prior practice by making the interest of an innocent "owner" nonforfeitable. Senator Nunn, sponsor of the amendment, stated that the provision was added "to make it clear that a bona fide party who has no knowledge or consent to the property he owns having been derived from an illegal transaction, that party would be able to establish that fact under this amendment and forfeiture would not occur." *See* Congressional Record-Senate, July 27, 1978, page S 11967. Moreover, the legislative history of the amendment makes clear that by the term "owner" the Congress intended to include secured parties, as well as title holders. The joint House-Senate explanation states, "The term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." *See* Congressional Record-Senate, October 7, 1978, page S 17649; Congressional Record-House, October 13, 1978, page H 12792. Thus, the remedy of an innocent owner is to file a claim in the forfeiture proceeding and establish (1) the existence of his "ownership" interest and (2) his innocence. When this showing is made, the claimant's interest survives forfeiture and may be returned to him in the manner provided by the Court. The Attorney General now rejects petitions for remissions or mitigation filed in such cases as improvidently filed.

The issue before this Court concerns the *extent* to which "the interest of an owner" is protected under Subsection (a)(6). There is a dearth of case law addressing this issue, and the legislative history reveals only a concern about protecting the "interest" of innocent owners, with no precise explanation as to what that interest represents. In the absence of any legislative or judicial guidance, the Court looks to the nature of civil forfeiture actions under Section 881 and to the practice that was used to protect an innocent lienholder's interest prior to the enactment of Subsection (a)(6).

■ From a long line of decisions dating back to *United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890), it is clear that, when property is subject to forfeiture for violation of the law, title vests absolutely in the sovereign at the date of the illegal act. Seizure and a subsequent judicial decree of forfeiture merely confirm the forfeiture that has already taken place. *See also United States v. One 1967 Chris-Craft 27 Foot Fiber Glass Boat,* 423 F.2d 1293 (5th Cir.1970); *Florida Dealers and Growers Bank v. United States,* 279 F.2d 673 (5th Cir.1960); *Wingo v. United States,* 266 F.2d 421 (5th Cir.1959). Because forfeiture actually occurs at the moment of illegal use, no third party can acquire a legally recognizable interest in the property after the activity that subjects it to forfeiture.

When the lienholder-claimants' assertions that they are entitled to post-seizure interest, attorney's fees, and other charges are tested against this principle, they become untenable. To hold that an innocent lienholder's interest continues to grow, necessarily at the expense of the government, results in a diminution of the government's forfeited interest. Such a result is contrary to the holding in *Stowell* that the interest of the government is fixed as of the date of the illegal act. Indeed, under a literal application of *Stowell,* the interest of innocent third parties would be cut off at the date of the violation (purchase of the tracts with drug money) rather than at the date of seizure.

■ However, under the administrative practice followed prior to the enactment of Subsection (a)(6) and still followed with regard to forfeitures under other sections, the government has chosen to afford lienholders greater protection than they are entitled to under *Stowell.* In ruling on petitions for remission and mitigation, the Department of Justice has consistently taken the position that a lienholder's interest is cut off as of the date of the seizure. Thus, a lienholder is entitled to accumulated and unpaid principal and interest up to the date of seizure and the remainder of the principal owed; however, the lienholder is not entitled to interest or other charges that accrue after the date of seizure. *See* 28 C.F.R. 9.2(d).

Of course, these regulations apply to property that is concededly forfeitable and concerning which relief from forfeiture is a matter of executive grace, whereas the interest protected in Section 881(a)(6) is now statutorily exempt from forfeiture. Nevertheless, this administrative practice has been in effect for many years, and Congress' failure to advert to it or provide some specific guideline supporting a different interpretation when enacting Section 881(a)(6) is persuasive evidence that Congress intended that innocent owners and lienholders were to receive the same financial protection under the statute that they had received for years in the administration process. *See Zemel v. Rusk,* 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179 (1965). Certainly, Congress has the power to determine how property forfeited under 21 U.S.C. § 881 is to be distributed. It could provide for the payment of post-seizure interest and attorney's fees if it so desired.[2] However, until Congress does so, this Court will not assume that it intended to do so.

This conclusion is further bolstered by an examination of other provisions in Section 881. Subsection (a)(4) authorizes forfeiture of conveyances used to transport drugs. The purchase of many such conveyances is financed in whole or in part by lienholders who have as great a claim to innocence as lienholders given specific statutory protection in Subsection (a)(6). However, "(a)(4)" lienholders are not protected by statute and may only seek relief through a petition for remission or mitigation. It would be unreasonable to conclude that Congress intended that innocent lienholders with an interest in real property purchased with drug proceeds are entitled to greater financial protection than other innocent lienholders with an interest in an automobile. It would appear that Congress merely intended to provide *procedural* protection to "(a)(6)" lienholders by permitting them to seek "pre-forfeiture" relief in court rather than "post-forfeiture" remission relief through the administrative process.[3]

Consequently, the Court awards the lienholder-claimants in these actions no more than the remaining principal due under their notes. The Court denies the lienholder-claimants any recovery for post-seizure charges.

---

**2.** In fact, Congress is presently considering legislation that would specifically allocate funds forfeited under 21 U.S.C. § 881 to various purposes. *See* Sections 409 and 410 of S. 829 (98th Congress, 1st Session). The only specific allocation now found in 21 U.S.C. § 881 is for payment of the government's expenses. *See* 21 U.S.C. § 881(e).

**3.** In this connection it is significant that Congressman Rogers stated that the Subsection (a)(6) provision "expands the rights of innocent parties ... to *assert their claim in court....*"

*See* Congressional Record-House, October 13, 1978, p. H 12790. (Emphasis added.) In other words, the interest protected by Subsection (a)(6) is the same as the interest protected by the Attorney General in forfeitures under Subsection (a)(4); only the avenue by which protection is provided is different. Neither Congressman Rogers nor any other member of Congress made any reference to any right to greater financial recovery under Subsection (a)(6) than was already available through pre-existing administrative procedure.