UNITED STATES of America, Plaintiff,

v.

**8.4 ACRES OF LAND LOCATED IN LIT-TLE RIVER TOWNSHIP, Horry County, South Carolina, With Improvements Thereon Known as Little River Campground, Defendant,**

and

**Coastal Seafood Enterprises of Little River, Inc., Eva Frye Wood, and United Carolina Bank, Claimants.**

UNITED STATES of America, Plaintiff,

v.

**ONE PARCEL OF REAL PROPERTY LOCATED ON WATSON AVENUE, LITTLE RIVER VILLAGE, Horry County, South Carolina, With Improvements Thereon, Defendant,**

and

**Murray Bowman Brown and Bankers Mortgage Corporation, Claimants.**

Civ. A. Nos. 84–221–15, 84–247–15.

United States District Court,
D. South Carolina,
Florence Division.

June 24, 1986.

John Grimball, Asst. U.S. Atty., Columbia, S.C., for plaintiff.

Mark W. Buyck, Jr., Willcox, Hardee, McLeod, Buyck, Baker & Williams, Florence, S.C., Alvin Hammer, Law Office of Gedney M. Howe, III, Charleston, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

This is a consolidation of two civil forfeiture actions brought pursuant to the Drug Abuse Prevention Act, 21 U.S.C. § 801 *et seq.*, in which the plaintiff ("the government") sought to have the defendant prop-

erties condemned and forfeited on the theory that the properties were purchased with proceeds allegedly traceable to an exchange for a controlled substance in violation of the federal drug laws. *See* 21 U.S.C. § 881(a)(6).[1] Jurisdiction is based on 28 U.S.C. §§ 1345 and 1355. After a four-day jury trial commencing on March 24, 1986, the jury determined in *United States v. 8.4 Acres, Etc.*, C/A 84–221–15 (hereinafter "The Little River Campground") that 100% of the property should be forfeited to the government, and in *United States v. One Parcel, Etc.*, C/A 84–247–15 (hereinafter "The Watson Avenue Property") that 30% of the property should be forfeited to the government.[2]

1. For the related criminal proceeding, see *United States v. Murray Bowman Brown*, C/R 84–229. One of the claimants in the present civil forfeiture action, *United States v. 8.4 Acres, Etc.*, C/A 84–221–15, is Coastal Seafood Enterprises of Little River, Inc., a South Carolina corporation wholly owned by Murray Bowman Brown.

2. Pursuant to Rule 49, Fed.R.Civ.P. the case was submitted to the jury on special interrogatories and verdict forms. The questions, and responses of the jury, were as follows:

(C/A 84–221–15—Little River Campground)
1. In the context of this civil forfeiture case, a "proceed" is defined as anything received in exchange for monies which were derived from illegal drug trafficking. Do you find that the 8.4 Acres—Little River Campground is a "proceed" traceable to an exchange of a controlled substance, that is marihuana or quaaludes in the context of this case?

| Yes |
| --- |
| Yes or No |

2. If you find that the 8.4 Acres—Little River Campground is "proceed," you must determine if the entire (100%) property represents a "proceed." Only that part (percentage) of the whole property, consisting of traceable proceeds from illegal drug trafficking, is forfeitable. If mingled funds are used to buy assets, the government has the right to seize those assets, and to civilly forfeit that fraction of the property which represents the tainted ("proceeds") share of the mingled funds.
What percentage of the 8.4 Acres—Little River Campground do you find represents a "proceed" forfeitable to the government?

| 100% |
| --- |
| (ANSWER IN PERCENT) |

(C/A 84–247–15—The Watson Avenue Property)

The three lienholder claimants, Eva Frye Wood, United Carolina Bank, and Bankers Mortgage Corporation, did not participate in the civil forfeiture trial. Prior to trial, the government and all three lienholders stipulated that should the subject properties be declared forfeitable, the government would honor the lienholders' claims for unpaid principal and interest up until the date of seizure.[3] The matter is now before the court for a determination whether the two institutional lienholders,[4] United Carolina Bank and Bankers Mortgage Corporation, are entitled to post-seizure mortgage interest accruing after the relevant dates of seizure.

1. In the context of this civil forfeiture case, a "proceed" is defined as anything received in exchange for monies which were derived from illegal drug trafficking. Do you find that the Watson Avenue Property is a "proceed" traceable to an exchange of a controlled substance, that is marihuana or quaaludes in the context of this case?

| Yes |
| --- |
| Yes or No |

2. If you find that the Watson Avenue Property is a "proceed," you must determine if the entire (100%) property represents a "proceed" or if only a fraction (less than 100%) of the property represents a "proceed." Only that part (percentage) of the whole property, consisting of traceable proceeds from illegal drug trafficking, is forfeitable. If mingled funds are used to buy assets, the government has the right to seize those assets, and to civilly forfeit that fraction of the property which represents the tainted ("proceeds") share of the mingled funds.
What percentage of the Watson Avenue Property do you find represents a "proceed" forfeitable to the government?

| 30% |
| --- |
| (ANSWER IN PERCENT) |

3. The government filed its complaint for forfeiture *in rem,* and seized the Little River Campground on February 3, 1984. The Watson Avenue Property was seized on February 9, 1984. The two-year delay in bringing these cases to trial was a result of numerous motions for a stay, and an interlocutory appeal, affecting the proceedings.

4. On June 6, 1986, a consent order disposing of Ms. Woods' claim for post-seizure interest was filed in this court. Thus, this order resolves only the post-seizure claims of United Carolina Bank and Bankers Mortgage Corporation.

The United Carolina Bank is the holder of a first mortgage encumbering the subject Little River Campground, by virtue of a mortgage dated March 30, 1983, which was recorded in the Office of the Clerk of Court for Horry County, South Carolina on April 4, 1983 in mortgage book 823 at page 177. The current unpaid principal balance due to United Carolina Bank is Eighty One Thousand Six Hundred Thirty and 5/100 Dollars ($81,630.05).[5] There was no unpaid interest at the date of seizure. The United Carolina Bank seeks to recover Nine Thousand One Hundred Eighty-four and 66/100 Dollars ($9,184.66) in unpaid post-seizure interest up until March 24, 1986, with per diem interest from March 25, 1986, at Twenty-seven and 95/100 Dollars ($27.95).

The Bankers Mortgage Corporation (now known as The Fleet Real Estate Funding Corporation), is a successor corporation to the Aiken Loan and Security Company, an assignee of a mortgage on the subject Watson Avenue Property. The original mortgage on the property was executed by James Russell Williamson on May 29, 1972, in favor of First Provident Corporation of South Carolina and recorded in the Office of the Clerk of Court for Horry County, South Carolina, on June 1, 1972, in mortgage book 532 at page 583. Thereafter Murray Bowman Brown purchased the property. The current unpaid principal balance due to the Bankers Mortgage Corporation is Thirteen Thousand Four Hundred Eighty-two and 88/100 Dollars ($13,482.88). Unpaid interest at the date of seizure was Two Hundred Forty-seven and 1/100 Dollars ($247.01).[6] Bankers Mortgage Corporation seeks to recover Seven Hundred Ninety-six and 71/100 Dollars ($796.71) in unpaid post-seizure interest up until March 26, 1986, with per diem interest from March 26, 1986 at Two and 59/100 Dollars ($2.59).[7] Bankers Mortgage Corporation also requests Thirty-four and 20/100 Dollars ($34.20) in post-seizure late charges, and Two Thousand Five Hundred Ten and 98/100 Dollars ($2,510.98) in attorneys fees.[8]

With respect to both the United Carolina Bank and Bankers Mortgage Corporation, it is undisputed that the institutions had no knowledge or reason to believe that there was any illicit drug activity in connection with the properties or that the properties were "proceeds" traceable to an exchange for a controlled substance. Accordingly the claimants will be considered "innocent lienholders" under the various mortgages.

In contending that the lienholders are not entitled to post-seizure interest, the government advances two distinct arguments. First, the government argues that, consistent with the rationale of forfeiture law that property becomes "tainted and forfeitable" immediately upon its illegal use, the claimants' interest in the property should be considered "frozen" no later than the date of seizure. Moreover, the government urges that the claimants, as lienholders (and not owners) may not avail themselves of the "innocent owner defense" contained in 21 U.S.C. § 881(a)(6) to obtain post-seizure interest. The claimants, however, attack the alleged unfairness of the government's position, and point out to the court the relatively greater amount of post-seizure interest at issue in this case compared to prior reported decisions. For the reasons that are set out below, the court

---

5. At the date of seizure the current unpaid principal due was approximately $90,000. Subsequent payments made by and on behalf of Coastal Seafood Enterprises of Little River, Inc., have reduced the balance to $81,630.05.

6. Under Department of Justice regulations, lienholders are entitled to accumulated and unpaid interest up to the date of seizure. *See* 28 C.F.R. 9.2(d). Accordingly, in the present case, the government has agreed to pay all unpaid principal at the date of seizure.

7. The unpaid post-seizure interest of $796.71 is calculated from July 1, 1985 through March 26, 1986. Although seizure actually occurred on February 9, 1984, the government, in a posture different from its current litigating position, continued to pay post-seizure interest up until July 1, 1985.

8. *See* Brief of Bankers Mortgage Corporation In Opposition To The Government's Motion to Forfeit Interest After the Date of Seizure, affidavit of James B. Dodd.

sustains the government's position and rules that United Carolina Bank and Bankers Mortgage Corporation are not entitled to any post-seizure interest, late charges or attorneys fees arising from these civil forfeiture proceedings.

■ A civil forfeiture proceeding is an *in rem* action in which the property itself "is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate.... The forfeiture is no part of the punishment for the criminal offense." *Various Items of Personal Property v. United States*, 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931). The constitutionality of forfeiture statutes that permit illegally used property to be forfeited regardless of the owner's innocence or ignorance is well settled. *See Calero-Toledo v. Pearson Yacht Leasing Company*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

In the past, the remedy of an innocent lienholder in property forfeited under 21 U.S.C. § 881 has been to file a petition for remission or mitigation with the Attorney General of the United States. A petition for remission presumes that the property is forfeitable; however, it seeks a pardon based on the peculiar facts of the case. 28 C.F.R. 9.5(b); *see generally* 28 C.F.R. 9.

■ Perhaps as a result of the harshness of the doctrine of forfeiture, Congress in 1978 amended 21 U.S.C. § 881, by adding the "innocent owner defense" set forth in subsection (a)(6), which provides: "no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." The question before this court is whether this subsection affords innocent lienholders any entitlement for interest charges, beyond that available under the remission procedures set forth in 28 C.F.R. 9.

Only three reported decisions from district courts have addressed the question of whether a lienholder is entitled to post-seizure interest. In a well-reasoned Texas case, *United States v. One Piece of Real Estate, Etc.*, 571 F.Supp. 723 (W.D.Tex. 1983), the court denied the lienholders post-seizure interest, concluding that since forfeiture actually occurs at the moment of illegal use, the interest of a lienholder could not grow beyond the date of seizure. *Id.* at 725, 726. This line of reasoning draws support from *United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890) in which the Court observed:

> By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith. The rule was early applied under statutes enacting that whenever goods, the importation of which was prohibited, should be imported, they should be forfeited.

133 U.S. at 16–17, 10 S.Ct. at 247. In describing this doctrine of "relation back" the Court further stated:

> That the forfeiture of real estate, ... must take effect as soon as the offense is committed, is yet clearer, for those provisions contain nothing which by any possible construction could be supposed to postpone the forfeiture; and by the common law of England, even in the case of the forfeiture of all the real and personal estate of an offender, while the forfeiture of his goods and chattels was only upon conviction and had no relation backward, the forfeiture of his lands had relation to the time of the offense committed, so as to avoid all subsequent sales and incumbances.

133 U.S. at 18, 10 S.Ct. at 248 (citations omitted). The court in *One Piece of Real Estate, Etc.,* 571 F.Supp. 723, rejected the claimants' assertions that they were entitled to post-seizure charges by reasoning:

> To hold that an innocent lienholder's interest continues to grow, necessarily at the expense of the government, results in a diminution of the government's forfeited interest. Such a result is contrary to the holding in *Stowell* that the interest of the government is fixed as of the date of the illegal act. Indeed, under a literal application of *Stowell,* the interest of innocent third parties would be cut off at the date of the violation (purchase of the tracts with drug money) rather than at the date of seizure.

*Id.* at 725. Moreover, after tracing the legislative history of the "innocent owner defense" set out in 21 U.S.C. § 881(a)(6), the Texas court further determined that subsection (a)(6) merely expressed Congress' interest to provide pre-forfeiture procedural protection to "(a)(6) lienholders by permitting them to seek 'pre-forfeiture' relief in court rather than 'post-forfeiture' remission relief through the administrative process." *Id.* at 726. Thus, the subsection affords lienholders standing to contest a forfeiture but does not alter the lienholder's necessity to seek post-seizure remission relief through the avenues set forth in 28 C.F.R. 9.

The decision in *One Piece of Real Estate, Etc.,* 571 F.Supp. 723 was adopted, without much discussion by a Florida district court in *United States v. Escobar,* 600 F.Supp. 88 (S.D.Fla.1984).

In arguing their entitlement to post-seizure interest, the present lienholders rely almost exclusively on a decision from the northern district of Georgia in *United States v. All That Tract And Parcel Of Land,* 602 F.Supp. 307 (N.D.Ga.1985). In awarding post-seizure interest to lienholders, the Georgia court rejected the decision in *One Piece of Real Estate* by drawing a distinction between property interest and loan interest. The court in *All That Tract* reasoned "[c]ontrary to what the Texas

court suggests, the lienholder's *property interest* does not grow at the expense of the government's forfeited interest by allowing the lienholder to recover the *loan interest* to which it was entitled all along." *Id.* at 313.

This court finds the analysis set forth in *All That Tract* flawed in two material respects. First, to urge that the government's interest is not diminished by any award of post-seizure interest simply ignores the plain fact that, following a judicial sale of the forfeited property, the government will have at its disposal only those proceeds that remain after all of the lienholders' claims have been satisfied. To the extent that post-seizure interest awards increase the lienholders' claims, they necessarily reduce the government's remaining interest. Second, the court in *All That Tract* failed to recognize a vital distinction between owners and lienholders. Unlike an owner of forfeited property, a lienholder has additional recourse against the maker of the note to collect post-seizure interest. The present lienholders have proferred no reason why this avenue cannot be pursued. Accordingly, this court rejects the conclusions of the court in *All That Tract.*

After a review of the foregoing authorities, this court finds persuasive, and therefore adopts, the reasoning of the court in *United States v. One Piece Of Real Estate, Etc.,* 571 F.Supp. 723. IT IS THEREFORE ORDERED that the lienholders' claims for post-seizure interest, attorney's fees or late charges be denied.