UNITED STATES of America, Plaintiff,

v.

**CERTAIN REAL PROPERTY KNOWN AS GULFSTREAM WEST, 2600 HARDEN BLVD., LAKELAND, POLK COUNTY, FLORIDA; together with all appurtenances thereto and improvements thereon; Defendant.**

No. 87–6288–CIV–JAG.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

April 11, 1989.

Jeanne M. Mullenhoff, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Bruno Di Giulian, Di Giulian & Diciara, P.A., Fort Lauderdale, Fla., for defendant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the Motion for Determination of Interest of Mortgagee (BankAtlantic f/k/a Atlantic Federal) in the Proceeds of Sale of Forfeited Property. The government has filed a response to the motion.

The facts are not in dispute. On April 16, 1987, the United States filed its complaint seeking the forfeiture of the subject real estate. The forfeiture is premised on the fact that the equity owner/mortgagor, William Whittington, engaged in illegal drug involvment in violation of Title 21, section 881(a)(6) of the United States Code. In previous negotiations with the government, he pled guilty to Count I, *inter alia*, of the information. *See* Complaint, Exhibit B. The first count provides that "[f]rom an unknown time prior to March 1977, until and including August 1981", Whittington conspired to import marijuana in violation of 21 U.S.C. § 963. *See* Complaint, Exhibit A.

The claimant, BankAtlantic f/k/a Atlantic Federal Savings and Loan Association (the bank), filed an answer and a claim alleging that it had a mortgage on the subject property. It asserted what is known as the innocent owner defense pursuant to 21 U.S.C. § 881(a)(6). That section provides that, "no property shall be forfeited ... to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

By an Agreement dated December 31, 1986, William Whittington agreed to make the mortgage payment on the subject property for the month of December 1986. The plea agreement also provided that the government would make the mortgage payments from January 1, 1987 until the property was sold.

The forfeited property was sold on September 12, 1988 pursuant to this court's order dated July 7, 1988. The government placed the proceeds from the sale totaling $207,419.86 in the court's Registry. This court is now called upon by the present motion to determine the parties' interest in those proceeds.

BankAtlantic claims entitlement to the majority of the funds ($195,928.84) deposited in the Registry. It claims that the government, as the new owner of the real estate, defaulted on the mortgage. The mortgage note provides that a default occurs whenever any payment is not made within thirty days of the due date. It is undisputed that the government did not remit the payments due under the mort-

gage (payment of principal and note rate interest) for the period of January 1987 to August 1988 until July 21, 1988 (the August payment was evidently prepaid).

There are various default provisions in the February 16, 1984 mortgage note between BankAtlantic and William Whittington. It provides for a "late charge" of five percent of any monthly installment not paid within fifteen days of the installment date. Further, upon default, the note provides for an interest rate of nineteen percent. In the event that a default occurs, the bank reserves its right to accelerate the whole debt and assess "reasonable attorney's fees and all other [collection] costs."

The government claims that the bank is only entitled to a return of the principal and interest at the rate of two percent above the prime rate, as provided for in the note. The government contends that it afforded the mortgagee an "unprecedented advantage" by paying the mortgage before the property was sold pursuant to the plea agreement with Whittington, rather than after the sale as provided for under 19 U.S.C. § 1613 (made applicable to 21 U.S.C. § 881(a)(6) through section 881(d)).

The government concedes that the bank is an "owner" under section 881(a)(6). *See* Plaintiff's Motion in Opposition to Claimant BankAtlantic's Motion for Determination of Interest of Mortgagee at 2. The issue, therefore, is not whether the mortgagee is an innocent owner, but what is the extent of that owner's interest in the sale proceeds placed in the court's Registry.

Section 881(a)(6) provides that the innocent owner is protected "to the extent of the interest" he has in the property. Unfortunately, Congress did not further define the scope of this "interest".

■ Of the arguments made by BankAtlantic in support of recovering its charges under the note, the most significant is a position based on basic fairness and the constitutional right to due process under the Fifth Amendment. It is undisputed that the bank had a valid mortgage on the property. It also has a right to expect this court to protect legitimate contract expectations subject only to lawful deprivations.

The bank's argument is premised on its understanding of the nature of a forfeiture proceeding. Under its theory, when the subject property was forfeited, the government obtained the entire interest of the wrongdoer, Whittington, but took title subject to the interests of any innocent owners. The bank argues that upon forfeiture, the government stepped into the shoes of the wrongdoer. Here, the United States, in effect, obtained title to the Gulfstream property *subject to* the bank's mortgage.

To hold otherwise and allow the government to take title to the property free from the claims of innocent lien holders, argues BankAtlantic, would not only be unfair but would constitute a deprivation of property without due process of law.

The bank's argument is bolstered by examining the primary policy considerations underlying the forfeiture statute. As noted by the government, the purpose of the illegal drug forfeiture statute is to "remove the incentive to engage in the drug trade and to deny drug dealers the use of [sic. "in"] their ill-gotten gains." *See* Plaintiff's Motion in Opposition to Claimant BankAtlantic's Motion for Determination of Interest of Mortgagee at 12–13. The bank contends that the loss of its interest will not promote either of these objectives. As the Fourth Circuit Court of Appeals stated in the case of *In re Metmor Financial, Inc.*, "the only purpose served by retaining an innocent lienor's mortgage interest is to boost the federal treasury." 819 F.2d 446,450 n. 7 (4th Cir.1987).

While the bank's arguments have great appeal, they are not the law. As the U.S. Supreme Court has noted:

If the case were the first of its kind, it and its apparent paradoxes might compel a lengthy discussion to harmonize the section with the accepted tests of human conduct. Its words [the forfeiture statute] taken literally forfeit property illicitly used though the owner of it did not participate in or have knowledge of the illicit use. There is strength, therefore, in the contention that if such be the inevitable meaning of the section, it

seems to violate that justice which should be the foundation of the due process of law required by the Constitution....

Regardless in this abstraction the argument is formidable, but there are other and militating considerations. Congress must have taken into account the necessities of the government ... therefore it may be said, that Congress interposes the care and responsibility of their owners in aid of the prohibitions of the law and its punitive provisions, by ascribing to the property a certain personality, a power of complicity and guilt in the wrong. In such case there is some analogy to the law of deodand by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited. To the superstitious reason to which the rule was ascribed, Blackstone adds:

> "That such misfortunes are in part owing to the negligence of the owner, and therefore, he is properly punishable by such forfeiture."

And he observed:

> "A like punishment is in like cases inflicted by the Mosaical law: 'If an ox gore a man that he die, the ox shall be stoned, and his flesh shall not be eaten.' And, among the Athenians, whatever was the cause of a man's death, by falling upon him, was exterminated or cast out of the dominions of the republic." (citations omitted) ...

But whether the reason ... be artificial or real, it is too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced (citations omitted). *J.W. Goldsmith, Jr.-Grant, Co. v. United States,* 254 U.S. 505, 510–11, 41 S.Ct. 189, 190–91, 65 L.Ed. 376 (1921).

■ At common law, when property was forfeited, the government obtained the title free and clear of any interests of the record owner or any lien holders. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–686, 94 S.Ct. 2080, 2090–2093, 40 L.Ed.2d 452 (1974), reh'g denied, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). The flaw in the bank's position is

its reasoning that just the wrongdoer's interest is lost in a forfeiture as opposed to the property itself. As *J.W. Goldsmith, Jr.-Grant, Co.* demonstrates, it is "the thing", the property itself, which is considered the offender and which is forfeit, and hence the forfeiture does not offend the Fifth Amendment right to due process of law.

■ The court is aware of the rule of construction that penal statutes are to be construed strictly and that forfeitures are not favored in equity. However, to say that a forfeiture statute is penal and to be strictly construed, is not to say that Congress lacks the power to cause the forfeiture of an innocent owner's interest. Indeed, Congress may do exactly that under its police power when it believes the public good is best served by the rigid enforcement of a forfeiture statute. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–690, 94 S.Ct. 2080, 2090–2095, 40 L.Ed.2d 452 (1974), reh'g denied, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974); *United States v. The Malek Adhel,* 43 U.S. (2 How.) 210, 233–35, 11 L.Ed. 239 (1844); *United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890); *J.W. Goldsmith, Jr.-Grant, Co. v. United States,* 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921); *Van Oster v. Kansas,* 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926).

■ The only limitation on Congress is that it must clearly manifest its intention to forfeit the interest of an innocent owner. *See e.g. Stowell,* 133 U.S. at 12, 10 S.Ct. at 245 (and cases cited therein). Here, the language of the civil forfeiture provision, 21 U.S.C. § 881, is certainly broad enough to include such interests. Subsection (a) states, "[t]he following shall be subject to forfeiture to the United States and *no property right shall exist in them* " (emphasis added). Furthermore, subsection (h) provides, "*All* right, title, and interest in property described in subsection (a) of this section [881] shall vest in the United States upon commission of the act giving rise to forfeiture under this section." (emphasis added).

However, even given the broad language above, there is the question of why subsection (a)(6) provides that innocent owners are protected from forfeiture to the "extent of the[ir] interest." The answer is found, once again, in the evolution of forfeiture law. Because historically all title to the property vested in the government at the time of the seizure[1], the only remedy of the innocent owner was to proceed against the wrongdoer or, more importantly, apply to the sovereign for a remittance. *See The Laura*, 114 U.S. 411, 413–14, 5 S.Ct. 881, 882–83, 29 L.Ed. 147 (1885); *State of Maryland v. Baltimore & O.R. Co.*, 44 U.S. (3 How.) 534, 11 L.Ed. 714 (1845); *cf.* 19 U.S.C.A. § 1618 (Supp.1988) (remission of forfeitures under revenue laws). As noted by the court in *United States v. One Piece of Real Estate*, 571 F.Supp. 723, 724 (W.D.Tex.1983), an innocent owner could apply for remission under the administrative procedure outlined in 28 C.F.R., section 9, "Remission or Mitigation of Civil and Criminal Forfeitures" (1988).[2] While the sovereign is not *required* to return any interest in the property, Congress has *allowed* for this act of executive clemency. Therefore, in construing the "interest" of an innocent owner under 21 U.S.C. § 881(a)(6), it is important to consider this past practice of the sovereign along with the history of the law of forfeiture. *See United States v. One Condominium Apartment*, 636 F.Supp. 457 (S.D.Fla.1986) (Gonzalez, J.); *United States v. One Piece of Real Estate*, 571 F.Supp. 723 (W.D.Tex. 1983); *United States v. 8.4 Acres of Land*, 648 F.Supp. 79 (D.S.C.1986), aff'd, 823 F.2d 549 (4th Cir.1987); *also see United States v. Escobar*, 600 F.Supp. 88 (S.D.Fla.1984) (Hastings, J.).

This court holds that the "interest" of an innocent owner under 21 U.S.C. § 881(a)(6) is the amount allowed by the government under its administrative practice for remissions. The applicable section, 28 C.F.R. § 9.1(h), explicitly disallows recovery for attorney fees and there is no support in the regulation for granting late charges, collection and court costs, or a penalty rate of interest.

In the case of other non-penalty amounts, the administrative practice has been to allow a return of a lender's principal and pre-seizure interest at the note rate. This court held in the prior decision of *United States v. One Condominium Apartment*, 636 F.Supp. 457 (S.D.Fla. 1986), that a claimant was not entitled to the return of post-seizure interest. Since that decision, however, the applicable Department of Justice regulation has been revised. Currently, section 9.2(h) allows for the return of interest "from the date of seizure through the last full month prior to the date of the notification granting the petition[for remission]." Therefore, BankAtlantic is entitled to interest on its principal at the non-default, note rate from the date of the seizure (January 1, 1987, because of the plea agreement) to a period one month preceding the sale of the property (here, September 12, 1988 so the appropriate cutoff date is August 12, 1988). However, it is undisputed that BankAtlantic has received a return of all its principal and post-seizure interest at the note rate until the date the forfeited property was sold. *See* Motion for Determination of In-

---

1. Section 881(h), Title 21 of the U.S.Code provides that title to the forfeited property vests in the government "upon commission of the act giving rise to forfeiture." However, this vesting is not completed until there is a judicial condemnation, which then relates back from the date of the decree to the date of the illegal act. *See Henderson's Distilled Spirits (United States v. One Hundred Barrels Distilled Spirits)*, 81 U.S. (14 Wall) 44, 20 L.Ed. 815 (1871); *United States v. $41,305.00 in Currency*, 802 F.2d 1339, 1346 (11th Cir.1986).

2. Congress amended 21 U.S.C. § 881 to add subsection (a)(6) in 1978. Since passage of that

Amendment, the Attorney General has refused to grant remission and has relegated applicants to the judicial forum to assert their innocent owner defense. *See United States v. One Piece of Real Estate*, 571 F.Supp. 723, 725 (W.D.Tex. 1983). This fact does not undermine this court's reliance on past administrative procedure. There is no reason why the Executive branch cannot delegate the function of adjudicating claims for remissions to the courts. Congress has so provided by enacting section 881(a)(6) which is well within Constitutional limitations. *See* U.S. Const. art. III, § 1.

terest of Mortgagee in Proceeds of Sale of Forfeited Property at 3. Hence, BankAtlantic has received the total amount to which it is entitled.

The court having considered the above matters, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED as follows:

(1) The Motion to Strike Plaintiff's Motion for Enlargement of Time filed by the claimant, BankAtlantic, is DENIED. The government's Motion for Enlargement of Time to File Opposition to Claimant's Motion for Determination of Mortgagee's Interest is hereby GRANTED, excusable neglect having been demonstrated.

(2) The Request for Hearing on Motion filed by BankAtlantic is hereby DENIED. The material facts are not in dispute and the legal issues involved can be resolved without the need for oral argument.

(3) The Motion for Determination of Interest of Mortgagee BankAtlantic shall be treated as a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The material facts are not in dispute and there is no need for additional discovery. The court, having decided that the United States is entitled to a judgment as a matter of law, hereby FINDS that BankAtlantic's claim, in the amount of $195,928.84, to those funds deposited in this court's Registry is DISALLOWED. As a matter of law, the claimant BankAtlantic's interest has no interest or entitlement to the proceeds from the sale of the forfeited property.

(4) The United States is hereby DIRECTED to file a memorandum within twenty days of the date of this order stating the status of the case and reporting on the progress of all claims including that filed by the alleged lienholder, Aluminum, Inc.

DONE AND ORDERED.