**In Re METMOR FINANCIAL, INC. (formerly known as Crossland Capital Corporation); Claimant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**· METMOR FINANCIAL, INC., (formerly known as Crossland Capital Corporation), Claimant-Appellant,**

**and**

**Twelve and Forty-Six Hundreths (12.46) Acres of Land Located In Dade County, Florida, known as the North ½ of the Southwest ¼, Less the South 240 Feet Thereof, In Section 14, Township 56 South, Range 38 East Dade County, Florida, a/k/a 22800 S.W. 194th Avenue, Miami Florida, With All Improvements, Appurtenances, and Personal Property Contained Therein, Defendant.**

**In re Bruce S. TAMLYN, Claimant.**

No. 86–3710.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1987.

Decided May 20, 1987.

---

John Berkley Grimball, II, Asst. U.S. Atty. (Vinton D. Lide, U.S. Atty., Columbia, S.C., on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, RUSSELL, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

In this case of first impression, Metmor Financial, Inc. (Metmor), an innocent lienor, challenges a district court forfeiture order rendered pursuant to provisions of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 881 (1978). In accordance with the Act, Metmor's rights as an innocent lienor were recognized by providing that the property be forfeited to the government subject to Metmor's lien. However, the district court refused to require the government to pay interest on the debt for the time period between the seizure of the property and its final sale. We reverse this aspect of the forfeiture order.

I.

The forfeited property in this case is a small horse ranch in Dade County, Florida. In 1974, that property was purchased by Newton and Nancy Baker. The Bakers executed a mortgage in favor of Allstate Enterprises Mortgage Corporation, which soon thereafter assigned the mortgage to Metmor. Paul Ackley, an alleged drug smuggler and fugitive, bought the property from the Bakers sometime in 1985, when it was already encumbered by Metmor's lien. This forfeiture action was brought, under 21 U.S.C. § 881(a)(6), because of the perceived connection between this property and Ackley's allegedly illegal drug activities.[1]

The district court granted the government's motion for an order of forfeiture.

Jon R. Moss (Frederick T. Jelin, Berger, Kahn, Shafton & Moss, Marina Del Rey, Cal., on brief), for claimant-appellant.

1. Subsection (6) was added to § 881 by Pub.L. 96–132, enacted in 1978. With the amendment, § 881(a)(6) provides:

§ 881. *Forfeitures*
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
. . . . .
(6) All ... things of value furnished ... by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all [things] used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

The court's order "condemned and forfeited" to the United States the property in question, "subject to a lien by [Metmor] in the principal amount of $183,914.54, plus interest at 9.5% from March 1, 1985 [the date when the government's complaint for forfeiture was filed] through March 28, 1985 [the date when the property was seized]." The court thus denied Metmor the right to collect any interest that accrued from the date of seizure until the final sale which, at least up to the time of oral argument (some twenty-three months after the seizure), had not yet occurred.

There is no dispute about the essential facts. The government does not deny that Metmor obtained an interest in the property *before* the property became implicated in any illegal activity, i.e., that Metmor is an "innocent mortgage holder." Nor does the government contest the district court's ruling that the property be forfeited subject to Metmor's lien.[2] The only issue on appeal is whether Metmor is entitled to collect post-seizure interest on its mortgage, until the time when the property is eventually sold. We conclude that Metmor has that right, and thus reverse that part of the district court's forfeiture order that precludes Metmor from collecting post-seizure interest.[3]

## II.

As far as we are aware, no court of appeals, and only a handful of district courts, have addressed this issue. All of the cases which support the government's position[4] rely on a Texas district court opinion[5] which, in our view, misconstrues an early Supreme Court ruling that actual-ly supports Metmor's position. We begin with consideration of that Supreme Court ruling.

In *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890), the Supreme Court held that when property is subject to forfeiture upon commission of a certain illegal act, title vests in the government at the time of the act's occurrence—judicial condemnation serves only to formalize the transfer of ownership. As a result, no third party can acquire a legally valid interest in the property, from anyone other than the government, *after* the illegal act takes place. The purpose of this rule was to prevent the offender from alienating the property prior to seizure and condemnation, and thereby escaping some of the consequences of his wrongdoing. *Id.* at 17–18, 10 S.Ct. at 247–48.

The plaintiff in *Stowell*, however, like Metmor here, obtained a mortgage interest in the property *before* any illegality occurred. *Id.* at 19, 10 S.Ct. at 248. Since Stowell concededly had no involvement in the illegality, the Supreme Court held that "the mortgage is valid as against the United States, and ... so far as concerns the real estate, the judgment of condemnation must be against the equity of redemption *only*." *Id.* at 20, 10 S.Ct. at 248 (emphasis added).

■ It is this aspect of *Stowell*, ignored by the government, that is critical for our purposes. The case holds that, even though forfeiture occurred prior to the actual seizure, the government can succeed to no greater interest in the property than that which belonged to the wrongdoer

---

**2.** There is no question that Metmor is an "owner" within the scope of § 881(a)(6)—a term that includes anyone with an interest (legal or equitable) in the seized property. *United States v. One Piece of Real Estate, etc.*, 571 F.Supp. 723, 725 (W.D.Texas 1983), and citations therein.

**3.** In its brief, Metmor also sought to recover its costs and attorneys' fees expended in recovering its property. Had this been provided for in the mortgage agreement, such expenses would be a part of Metmor's property interest, to which it would be entitled. However, the agreement provides for these expenses only in the event of

collection pursuant to a default; the provision is thus inapplicable in these circumstances. Moreover, Metmor's counsel conceded at oral argument that the issue was largely academic in this case.

**4.** *United States v. 8.4 Acres of Land, etc., et al.*, 648 F.Supp. 79 (D.S.C.1986); *United States v. One Condominium Apartment*, 636 F.Supp. 457 (S.D.Fla.1986); *United States v. Escobar*, 600 F.Supp. 88 (S.D.Fla.1984).

**5.** *United States v. One Piece of Real Estate, etc.*, 571 F.Supp. 723 (W.D.Tex.1983).

whose actions have justified the seizure. Ackley purchased the property encumbered by Metmor's secured note, *with interest accruing.* His equity was subject to an obligation to repay the borrowed principal *and* to pay interest on the unpaid balance until all of the principal was repaid. The government now attempts to transform that note into one that is unsecured and interest free. Such a result would deprive Metmor of its stake in the forfeited property and would constitute a taking without due process.

Metmor does not deny that the government obtained an interest in the property, which Ackley could not subsequently alienate, at the time of Ackley's alleged illegal drug activities. But that is irrelevant to the issue here. Metmor simply argues that the government could only legally obtain an ownership interest equivalent to that which belonged to Ackley—i.e., a stake in property which carried a pre-existing mortgage with continually accruing interest. The forfeiture cannot change the nature of Metmor's rights as an innocent mortgagee. *See Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 579 n. 7, 55 S.Ct. 854, 858 n. 7, 79 L.Ed. 1593 (1935) ("It is the general rule that a holder of the equity of redemption can redeem from the mortgagee only on paying the entire mortgage debt"). We agree.

The legislative history of § 881(a)(6) indicates congressional recognition of this principle. The Joint House-Senate Explanation of the Senate Amendment to the House Amendment to the bill which ultimately passed, the Psychotropic Substance Act of 1978, states that "no property would be forfeited under the Senate amendment *to the extent of* the interest of any innocent owner...." 124 Cong.Rec. 36,948 (1978)

(emphasis added). Representative Rogers, then chairman of the Subcommittee on Health and the Environment of the House Committee on Interstate and Foreign Commerce, further explained:

> [The Senate Amendment] expands the rights of innocent parties who own or have an interest recognized by the law in the seized property, to assert their claim in court to the extent of their interest in that property by establishing that the illicit use of the property was without their knowledge or consent.

124 Cong.Rec. 36,946 (1978). *See also* testimony of Senator Nunn, sponsor of the amendment (*id.* at 23,057):

> [W]e did add a provision in the modification to make it clear that a bona fide party who has no knowledge or consent to the property he owns having been derived from an illegal transaction, that party would be able to establish that fact under this amendment and forfeiture would not occur.
>
> That is the purpose of the wording added to the modification, in addition to some other wording in the modification making the amendment broader than it otherwise would have been.[6]

The government's principal argument to support the judgment of the district court is that a mortgagee cannot be permitted to diminish the value of seized property belonging to the United States. The rationale for this concern is provided by the Texas case on which the government primarily relies, *United States v. One Piece of Real Estate, etc.,* 571 F.Supp. 723, 725 (W.D.Texas 1983):

> To hold that an innocent lienholder's interest continues to grow, necessarily at

---

**6.** The government claims to find supportive legislative intent in the fact that, in its 1978 and 1984 legislative enactments relating to forfeitures, Congress chose not to disturb either the ruling in *Stowell* or the administrative practice denying post-seizure interest. Neither of these factors aids the government's position. *Stowell,* as noted above, actually supports Metmor's interpretation, except as misconstrued in the *One Piece* analysis. In addition, there is no indication that Congress was aware of the administrative practice of denying post-seizure interest,

such that a failure explicitly to eliminate the practice could be viewed as an endorsement. Even assuming congressional awareness, no endorsement could properly be inferred; the legislative history quoted above makes clear that the 1978 amendment was intended to "expand[ ] the rights of innocent parties." Section 881(a)(6) itself provides that *"no* property shall be forfeited ... *to the extent of the interest* of an [innocent] owner...." (emphasis added) That language plainly covers all aspects of an innocent owner's stake in otherwise forfeitable property.

the expense of the government, results in a diminution of the government's forfeited interest. Such a result is contrary to the holding in *Stowell* that the interest of the government is fixed as of the date of the illegal act.

Allowing Metmor to recover post-seizure interest obviously reduces the total amount of money available to the government. However, the desirability of enhancing the government's recovery does not detract from the validity of Metmor's claim. The government's legally cognizable interest in the forfeited property is not diminished by continuing payments to Metmor for the plain and simple reason that the government's "interest" in the property entails an obligation to make continuing "interest" payments on the preexisting mortgage. The aspect of *Stowell* on which the Texas court relied relates only to *when* the government's interest attaches—not to the *nature* of that interest.

Some of the fallacies in the *One Piece* analysis were effectively exposed by the Georgia district court in *United States v. All That Tract & Parcel of Land, etc.*, 602 F.Supp. 307, 313 n. 11 (N.D.Ga.1985):

> Contrary to what the Texas court suggests, the lienholder's *property interest* does not grow at the expense of the government's forfeited interest by allowing the lienholder to recover the *loan interest* to which it was entitled all along. (Perhaps the Texas court confused the distinction between the two types of "interest.") [emphasis in original]

Indeed, if viewed from the perspective of a Fifth Amendment taking, for which a plaintiff is entitled to "just compensation"—typically defined as "fair market value of the property on the date it is appropriated"—the government must pay Metmor the fair market value of the mortgage as of the date of the transfer of title, a value which would include the interest that accrues under the mortgage terms. *See Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 2194, 81 L.Ed.2d 1 (1984).

■ The government also argues that Metmor's mortgage rights have not been impaired because Metmor can still collect post-seizure interest from other sources. However, Metmor responds that the most likely such source is Ackley, a fugitive from justice whose assets would probably be unavailable to Metmor even if he could be found. The situation is analogous to that in *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). The plaintiffs in *Armstrong* held materialmen's liens, enforceable only by attachment, on property that was subsequently transferred to the government. Since the United States is immune from suit for attachment, the transfer effectively precluded enforcement of the liens, although the liens remained technically valid. Thus, as in Metmor's case, transfer to the government altered, not the lien itself, but its enforceability. Where the enforceability has been significantly impaired, there has been a Fifth Amendment taking. *Cf. id.* at 46–49, 80 S.Ct. at 567–69 (total destruction of lien value constitutes "taking"). The holders of the materialmen's liens in *Armstrong* were thus held to be entitled to just compensation. Metmor is entitled to similar recovery here.[7]

---

**7.** The government argued in its brief that the post-seizure interest and litigation expenses sought by Metmor are mere incidents to a valid government action, and thus noncompensable. This argument was rejected by the Court in *Armstrong*, 364 U.S. at 46–49, 80 S.Ct. at 1567–69. Moreover, the government conceded, in oral argument, that the impact was de minimus only in monetary, and not legal, terms. The argument is also problematic in light of the government's concession that Metmor had a valid pre-existing mortgage which entitled it to recover the principal and pre-seizure interest. There is no reason why, under this theory, post-seizure interest and expenses should be treated differently. The cases cited by the government, *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) and *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), are inapposite. They involve government action undertaken for a clearly public purpose; in this case, the only purpose served by retaining an innocent lienor's mortgage interest is to boost the federal treasury. In addition, those cases truly involve regulations which just happen to affect private property values; in this case, the government has actually seized property, and the only question is the nature of the interest which it seized.

Even if Metmor could realistically pursue other sources to recover its interest, the district court's holding would transform Metmor from a secured creditor to an unsecured creditor. As the Court in *Armstrong* noted, the government cannot "deprive mortgagees of substantial incidents of their rights to resort to mortgaged property." 364 U.S. at 44, 80 S.Ct. at 1566 (describing the holding in *Radford*, 295 U.S. 555 (1935)). Nor can the government significantly interfere with Metmor's use and enjoyment of its property. *See, e.g. Pete v. United States*, 531 F.2d 1018, 1031, 209 Ct.Cl. 270 (1976).

The government denies that it is benefitting from an interest-free loan at Metmor's expense. We think otherwise. Although no formal loan from Metmor has been obtained, the government has use of the mortgaged property, without paying the interest due on the mortgage, until such time as it chooses to sell. In any event, the proper consideration is Metmor's loss, and not the government's gain. *United States v. Causby*, 328 U.S. 256, 261, 66 S.Ct. 1062, 1065, 90 L.Ed. 1206 (1946). From that perspective, Metmor has clearly lost nearly two years worth of accumulated interest.

### III.

We summarize our conclusions as follows. The government is statutorily authorized to seize and condemn property that constitutes illegal proceeds of narcotics transactions. However, to the extent that "innocent" owners have a stake in such property, no forfeiture can occur. Where, as here, that stake encompasses a right to receive continuing interest payments on unpaid principal, we hold that the innocent owner is entitled to receive such payments from the government, even after the property has been seized, until the principal is repaid.

REVERSED AND REMANDED.