**UNITED STATES of America, Plaintiff**

v.

**REAL PROPERTY CONSTITUTING APPROXIMATELY FIFTY (50) ACRES, Including a House, Garage, Outbuildings, Cottage, and Appurtenances known as the Frank Mongiove Property LOCATED IN the Fifth Civil District of SEVIER COUNTY, TENNESSEE, Defendant.**

Civ. No. 3–88–562.

United States District Court,
E.D. Tennessee, N.D.

Nov. 10, 1988.

On Motion for Summary Judgement
Jan. 30, 1989.

Marilyn L. Hudson, Asst. U.S. Atty., Knoxville, Tenn., for plaintiff.

W. Thomas Dillard, Knoxville, Tenn., Ben D. Brabson, Jr., Sevierville, Tenn., for defendant.

## MEMORANDUM OPINION

JARVIS, District Judge.

*Background Information*

This action for forfeiture *in rem* was filed on July 18, 1988 for the forfeiture of certain real property titled in the names of Frank Mongiove, single, and Patricia Newcomb, then single and now the wife of Frank Mongiove (hereinafter sometimes

collectively referred to as the "Mongioves"). [*See* Doc. 5]. The verified complaint alleges, *inter alia*, that said real property was used or intended to be used, to store and warehouse cocaine for purposes of resale, distribution and redistribution, to prepare and package cocaine for resale and distribution, and to house persons who engaged therein in the distribution of cocaine, possession of cocaine with intent to distribute, and preparation of cocaine for distribution. [*See id.*]. The Mongioves were personally served with process of this forfeiture action on July 18, 1988, which service included receiving copies of the complaint, together with summons, warrant of arrest and notice *in rem,* and notice of arrest and seizure. [*See* Docs. 8–9].

The warrant of arrest and notice *in rem* served on the Mongioves stated in relevant part as follows:

> ... [T]hat they must file their claims with the Clerk of this Court within ten (10) days after the execution of this process or within such additional time as they may be allowed by the Court and must serve their answer within twenty (20) days after the filing of their claim; and that they serve a copy of any claim they make or any pleadings they may file, upon the United States Attorney for the Eastern District of Tennessee ...

[*See* Doc. 4, p. 2]. The notice of arrest and seizure served on the Mongioves likewise stated in pertinent part as follows:

> ... Any person having or claiming an interest in or to said property must file his claim with the Clerk of the United States District Court for the Eastern District of Tennessee, Northeastern Division (sic) within ten (10) days after process has been executed or within such time as may be allowed upon application to the District Court, shall serve his answer to the complaint within twenty (20) days after the filing of the claim, and shall serve a copy of any claim made or pleading filed, upon the United States District Attorney for the Eastern District of Tennessee as provided by Title 28, *United States Code,* Rule C(6) of the *Supplemental Rules for Certain Admiralty and Maritime Claims.*

[*See* Doc. 6, p. 2].

On August 26, 1988, almost 40 days after this action was originally filed, the Government requested that the Clerk enter default of the defendant real property pursuant to Rule 55(a), Federal Rules of Civil Procedure, on the basis that there had been a failure to plead or otherwise defend. [*See* Doc. 13]. A copy of the Government's request for entry of default accompanied by an affidavit of default, as well as its motion for default judgment and other pleadings filed that same day, were all served on the Mongioves by mail on August 26, 1988. [*See* Doc. 15, p. 2]. Since no one timely objected to the request to enter default, *see* LR 10.1, 10.2, EDTN, the Clerk entered the requested default on September 9, 1988. [*See* Doc. 14]. On September 14, 1988, the Mongioves filed the pending motion to set aside the entry of default. [*See* Doc. 16]. Argument was subsequently heard and evidence was taken concerning the Mongioves' motion on November 4, 1988.

### Facts

The Mongioves contend that the default entered against them should be set aside because of a genuine misunderstanding between them and Attorney John P. Valliant, Jr. In particular, the Mongioves maintain that Mr. Valliant had agreed to represent them in this matter. Construing the proof in the light most favorable to the Mongioves, as the court is required to do, *see* INVST *Financial Group v. Chem–Nuclear Systems,* 815 F.2d 391, 398 (6th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987), the proof at the hearing indicates the following. After the Mongioves' farm was "raided" by the Government on July 13, 1988, Mrs. Mongiove's sister, Barbara Headrick, advised Mrs. Mongiove that she knew an attorney in Knoxville who would be able to provide her the necessary representation in this matter. Subsequently, Ms. Headrick contacted Mr. Valliant's office and, either as a result of that telephone call or a subsequent telephone call by Mrs. Mongiove, an

appointment was scheduled with Mr. Valliant on July 22, 1988. It also appears to be undisputed that Ms. Headrick and Mrs. Mongiove kept that appointment with Mr. Valliant. Ms. Headrick also testified that her sister provided "some papers" to Mr. Valliant at that meeting. Ms. Headrick also testified that Mr. valliant indicated to them that he would "file something" on or before July 28, 1988. Ms. Headrick further testified that Mr. Valliant refused any money or a check for a retainer at that time. Finally, Ms. Headrick testified that her sister made an appointment with Mr. Valliant for the following week.

Likewise, Mrs. Mongiove testified that she understood that Mr. Valliant was representing her and that he would "file papers" on her behalf before her next scheduled appointment with him. She also admitted, however, that she did not show up for that scheduled appointment with Mr. Valliant on July 29, 1988. Mrs. Mongiove testified that she was unable to keep that appointment because she and her husband left for a three or four week vacation on July 28, the day before her next appointment with Mr. Valliant. She testified that this vacation was in part to celebrate her birthday which was on August 1st and in part to escape the pressures resulting from the Government's seizure of their property.

In response, Mr. Valliant testified that he recalled first meeting with Mrs. Mongiove and her sister about this matter and then later meeting only with the Mongioves. At that second meeting, Mr. Valliant specifically remembered advising the Mongioves about the necessity for posting bond as a result of not only the seizure involved in this action but also the seizure of the Mongioves' automobile and other personal property. Mr. Valliant testified that it was his policy not to post bonds of any type, except for cost bonds in civil actions, on behalf of any of his clients. Since he had not received any money from the Mongioves to post these bonds, he certainly did not do so. Furthermore, Mr. Valliant testified that he did not receive or even quote an attorney fee because he had not yet agreed to represent them during these preliminary meetings. He also specifically remembered asking the Mongioves to prepare a "statement" of exactly what had previously occurred in order that he might evaluate their case and determine if he wished to represent them. Finally, Mr. Valliant testified that the Mongioves did not keep their next scheduled appointment on July 29, 1988, and that they never attempted to contact him while they were on vacation. He was surprised by their behavior since the Mongioves knew they had to post bonds and they knew they had to meet with him; yet they did neither. His final contact with the Mongioves before this hearing was on September 8, 1988, when Mrs. Mongiove came to his office to retrieve the documents left with him on July 26.

### Law and Analysis

■ The court would first note that a default only has been entered against the Mongioves—not a default judgment. Therefore, the mechanism by which an entry of default may be set aside is found in Rule 55(c), Federal Rules of Civil Procedure, as follows:

(c) **Setting Aside Default.** For good cause shown, the court may set aside an entry of default and, if judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Thus, in the instant case, the Mongioves must demonstrate "good cause" to the court. It is also important to emphasize that Rule 60(b), Federal Rules of Civil Procedure, provides, *inter alia,* that a default judgment may be set aside for "mistake, inadvertence, surprise, or excusable neglect ..." In *Shepard Claims Service v. William Darrah & Associates,* 796 F.2d 190 (6th Cir.1986), the Sixth Circuit described the standard for setting aside an entry of default as "somewhat more lenient" as opposed to the "stricter rule ... standards for Rule 60(b)", which would govern setting aside default judgments. *Id.* at 193–94. Obviously, if the Mongioves are able to satisfy the stricter standard of Rule 60(b), they will have also satisfied the "good cause" requirement of Rule 55(c). In applying the stricter standard of Rule 60(b), the Sixth Circuit has held that the

following three factors determine the outcome of a motion to set aside a default judgment:

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether culpable conduct of the defendant led to the default.

*Shepard Claims Service,* 796 F.2d at 192. Addressing these factors *seriatim,* the court first notes that delay alone is not a sufficient basis for establishing prejudice. *INVST Financial Group, Inc.,* 815 F.2d at 398. Rather, the prejudice must be shown by delay which will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. *Id.* In the instant case, the court finds that the Government has not demonstrated that prejudice from any delay would occur because the Government has not shown that discovery would be more difficult or that evidence would be lost.

The second factor is whether the Mongioves have a meritorious defense. In this case, there has been absolutely no showing or even a proffer of any meritorious defense to this action.

Finally, the court must focus on whether or not the culpable conduct of the Mongiovess led to the default.* Although the evidence was in dispute regarding the alleged agreement between Mr. Valliant and the Mongioves concerning his representation, certain key facts are not in dispute. There was absolutely no evidence that Mr. Valliant asked for or received an attorney fee to represent the Mongioves. More importantly, it is undisputed that the Mongioves did not keep their last scheduled appointment with Mr. Valliant on July 29, 1988; rather, they left on a three to four week vacation the day before the appointment. A critical fact here is that the Mongioves did not even advise "their attorney", Mr. Valliant, either that they would miss their appoint-

ment or that they would be on vacation. Of even more concern to the court is the glaring omission by the Mongioves in not even attempting to contact Mr. Valliant while they were on their extended vacation to inquire about the status of the case. Nor did the Mongioves call Mr. Valliant while they were gone to determine whether he had posted bonds for them. Obviously, the Mongioves were well aware that they had posted no bonds on any of the property in question, nor had they provided any funds to Mr. Valliant to do so. Additionally, it must be emphasized that the Mongioves were served with proper process, all of which provided notice to them that certain papers or responses must be filed with the court either within a ten or twenty-day time limitation. In other words, the Mongioves were put on notice that it was necessary for them to act *immediately.* And they did so—at first. Although the Mongioves initially acted promptly and prudently by meeting with an attorney, they abandoned this prudent course of action for a reason which does not appear reasonable— they abandoned the defense of this action in order to enjoy a three or four week vacation. This vacation by itself would not necessarily require the court to refuse to set aside the default if they had undertaken some act to indicate a sincere interest in this litigation. They did not. They did not keep their appointment with Mr. Valliant; they did not advise Mr. Valliant they would be on a three to four week vacation; and they did not attempt to contact Mr. Valliant (or any other attorney) while they were gone. This conduct by the Mongioves satisfies neither the requirements of Rule 60(b) nor of Rule 55(c). Succinctly put, the court finds that the Mongioves have exhibited a blatant disregard for these judicial proceedings and should suffer the consequences.

Additionally, in refusing to set aside the entry of default, the court is certainly

---

* The *Shepard* court readily distinguished a situation in which the culpable conduct of the attorney, such as his neglect and inattention, led to the entry of default. 796 F.2d at 195. Under those circumstances, the court held the client should not suffer the "ultimate sanction of losing his case without any consideration of the merits ..." *Id.* That is not the case before this court, however.

mindful of the following admonition from the Sixth Circuit on this issue:

> Trials on the merits are favored in federal courts and a "glaring abuse" of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default.

*United Coin Meter Company v. Seaboard Coastline RR*, 705 F.2d 839, 846 (6th Cir. 1983), (*citing Keegel v. Key West and Carribean Trading Company, Inc.*, 627 F.2d 372, 373–74 (D.C.Cir.1980)). With this standard in mind, the court nevertheless finds that the Mongioves have not even approached satisfying their burden of showing a meritorious defense or a lack of culpable conduct. The court finds that the Mongioves indeed deserve this harsh sanction.

Finally, the court would point out that this proceeding is governed by the *Supplemental Rules for Certain Admiralty and Maritime Claims. See generally* 7A J. Moore & A. Palaez, *Moore's Federal Practice,* ¶ C.11 (2 ed. 1988) (applicability of the *Supplemental Rules of Civil Procedure Governing Admiralty and Maritime Claims* to judicial forfeiture actions). The fact that this action is governed by these particular rules is critical since several courts have held claimants to strict compliance with the provisions of Supplemental Rule C(6). *See, e.g., United States v. Beechcraft Queen Airplane,* 789 F.2d 627 (8th Cir.1986) (affirming the striking of an answer which was not preceded by a verified claim); *United States v. United States Currency in the Amount of $2,857,* 754 F.2d 208 (7th Cir.1985) (affirming grant of summary judgment against claimant who filed claim with Drug Enforcement Administration instead of with the district court). Rule C(6) provides that the claimant of property that is the subject of the action must file a verified claim within ten days after process has been executed or within such additional time as may be allowed by the court and must serve an answer within twenty days after the filing of the claim. Strict compliance with this rule has, however, been excused when the non-compliance was the result of the defendant's reliance on the actions by the Government.

*See, e.g., United States v. $38,000 in United States Currency,* 816 F.2d 1538, 1546–47 (11th Cir.1987) (due to the Government's procedural errors, claimants were not required to satisfy Supplemental Rule C(6)). In this case, there has been no proof presented which indicates any action by the Government which has resulted in the defendants' failure to comply with these supplemental rules. In short, the court concludes that the Mongioves have failed to show good cause as to why this court should set aside the entry of default.

Order accordingly.

## ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that the motion to set aside default [Doc. 16] filed by Frank P. Mongiove and Patricia Newcomb Mongiove be, and the same hereby is, DENIED whereby the court will not set aside the entry of default as to the Mongioves; however, the court hereby SETS ASIDE the entry of default [Doc. 14] as it pertains to petitioners Alice E. Smith, Bonnell Smith, Willard B. Harness, and Nettie P. Harness [*see* Doc. 34].

It is further ORDERED that the Government's motion for default judgment [Doc. 15] be, and the same hereby is, GRANTED TO THE EXTENT THAT the court hereby ENTERS a default judgment as to any and all rights, title and/or interests of the Mongioves regarding the real property which is the subject matter of this litigation.

## ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, United States of America, seeks forfeiture of the defendant real property pursuant to 21 U.S.C. § 881(a)(6). The verified complaint alleges, *inter alia*, that said real property was used or intended to be used, to store and warehouse cocaine for purposes of resale, distribution and redistribution, to prepare and package cocaine for resale and distribution, and to house persons who engaged therein in the distribution of cocaine, possession of cocaine

with intent to distribute, and preparation of cocaine for distribution. This action was properly served upon all interested persons and notice of arrest and seizure of defendant property was properly advertised in a local newspaper.

The only timely filed claim was that of Alice E. Smith, Bonnell Smith, Willard B. Harness and Nettie P. Harness, who claim an interest as innocent lienholders. These claimants do not dispute any averments in the complaint supporting a finding of forfeiture. The Government does not dispute that these claimants are innocent lienholders with an interest protected by 21 U.S.C. § 881(a)(7).

On August 26, 1988, almost 40 days after this action was originally filed, the Government requested that the Clerk enter default of the defendant real property pursuant to Rule 55(a), Federal Rules of Civil Procedure, on the ground that there had been a failure to plead or otherwise defend. No timely objection to the request for default was entered, and on September 9, 1988 the Clerk of this court entered that default. On September 14, 1988 the owners of the property, the Mongioves, filed a motion to set aside the entry of default and that motion was denied on November 10, 1988. *See* Memorandum Opinion, Court File # 36.

The following motions are currently pending:

(1) The motion [for summary judgment] of defendants Alice E. Smith, Bonnell Smith, Willard B. Harness and Nettie P. Harness seeking permission to foreclose on the subject property and a determination by this court regarding the compensation to which they are entitled under 21 U.S.C. § 881(a)(6) [Court File # 38]; and

(2) The Government's motion for summary judgment, for entry of judgment of forfeiture providing for private sale and response opposing claimant's motion [Court File # 39].

■ The Government is entitled to judgment of forfeiture upon an unrebutted showing of probable cause that the defendant property was used or intended for use

in any manner to commit or to facilitate the commission of a felony controlled substance offense. 21 U.S.C. § 881(a)(7); *United States v. One (1) 1966 Beechcraft Barron, No. N242BS,* 788 F.2d 384, 387 (6th Cir.1986). Probable cause may be proved by hearsay evidence. *United States v. One (1) 1975 Mercedes 280S, etc.,* 590 F.2d 196, 199 (6th Cir.1978). The affidavit filed in support of the seizure warrant filed July 14, 1988, which is incorporated in the complaint, details probable cause supporting the complaint's averments, including that search was made of defendant property pursuant to a federal search warrant during which cocaine hydrochloride was found within the defendant property. *See* Application and Affidavit for Search Warrant with attachments [Court File # 1]. Since the Government has made an unrebutted showing of probable cause that the defendant real property was used or intended for use to facilitate the commission of a felony controlled substance offense, the Government is entitled to summary judgment whereby the defendant property is hereby condemned and forfeited to the United States.

■ The Government has the option of releasing the property to the claimants for foreclosure or retaining the property and paying the claimants their due. *See* 28 U.S.C. § 2409a(b); *U.S. v. Real Property Titled in Name of Shashin, Ltd.,* 680 F.Supp. 332, 335 (D.Hawaii 1987). In the instant case, the Government has decided to retain the property, carry out a private sale of the property, and pay the lienholders what they are due under 21 U.S.C. § 881(a)(6). Accordingly, the claimants' request to foreclose on the real property is DENIED.

■ The parties have requested the court to make a determination regarding the claimants' entitlement to post-seizure interest and other charges and costs provided for in the loan agreement entered into between the claimants and the Mongioves. It is noted that the claimants contend that they are holders of a note executed by the Mongioves in the original principal amount of $42,000.00; that the note is secured by a deed of trust on the subject property; that the note is presently in de-

fault and the amount of principal and interest through October 6, 1988 is $32,540.66, and that interest accrued on the note from that time at a rate of $8.92 per diem. The note and deed of trust also make provision for attorney fees and costs of collection.

The claimants contend that their interests in the defendant property entitles them to recover from the proceeds of the sale "compensation ... in accordance with the terms and conditions of their deed of trust including but not limited to principal and interest until date of payment, their reasonable attorney fees and other costs and expenses of collection of this debt ..." [Court File # 38, at p. 2]. In support of claimants' position, they cite *In re Metmore Financial, Inc.*, 819 F.2d 446 (4th Cir.1987). The Government contends that claimants are entitled to receive the principal and certain interest payments, but are not entitled to any costs, attorney fees, late charges or other similar charges. The Government cites *United States v. One (1) Piece of Real Estate, etc.*, 571 F.Supp. 723 (W.D.Texas 1983) and a line of district court cases following the same reasoning.

The subject of post-seizure interest has generated much disagreement among district courts. The United States Court of Appeals for the Sixth Circuit has not yet addressed the question and, in fact, the Fourth Circuit in *Metmore* is the only court of appeals which has done so.

The court has reviewed the relevant authorities and finds itself in agreement with that line of cases following the reasoning set out by the Fourth Circuit in *Metmore*, 819 F.2d 446. I agree that denying the lienholder entitlement to post-seizure interest, attorney fees and other charges would result in a diminution of the lienholders' interest, and that such a result would be contrary to the statute, 21 U.S.C. § 881(a)(6). In the instant case, the claimants are entitled to principal they have proven plus interest through the date of payment and their reasonable attorney fees. The rate of interest will be ten per cent (10%) as provided in the deed of trust and promissory note.

The Government has indicated its desire to have the property sold by private sale.

This court may order such a sale only after a hearing of which notice to all interested parties shall be given. *See* 28 U.S.C. § 2001(b). The Clerk is DIRECTED to set a date for hearing on the issue of whether or not the sale should be made by private sale. The Clerk will notify all interested parties of the hearing date through publication in the *Mountain Press* newspaper with at least ten (10) days notice. The court will appoint the independent appraisers required by 28 U.S.C. § 2001(b) only after this hearing is held.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that the claimants' motion [Court File # 38] is GRANTED IN PART and DENIED IN PART. The Government's motion for summary judgment and for entry of judgment of forfeiture [Court File # 39] is GRANTED IN PART and DENIED IN PART.

The Clerk is DIRECTED to set a date for hearing on the issue of whether or not the sale should be made by private sale and to notify all interested parties of the hearing date through publication in *The Mountain Press* newspaper with at least ten (10) days notice.