**UNITED STATES of America**

v.

**PARCEL OF REAL PROPERTY KNOWN AS 708–710 WEST 9TH STREET, ERIE, PENNSYLVANIA and Buildings and Improvements Erected Thereon.**

**Civ. A. No. 88–106 Erie.**

United States District Court,
W.D. Pennsylvania.

July 14, 1989.

James J. Ross, Asst. U.S. Atty., Erie, Pa., for U.S.

John P. Garhart, Dunlavey, Nichols, Ward & Krill, Erie, Pa., for Richard A. & Jane M. DiLoreto.

Will J. Schaaf, Marsh, Spaeder, Bauer, Spaeder & Schaaf, Erie, Pa., for Marquette Sav. Ass'n.

## OPINION AND ORDER

GERALD J. WEBER, District Judge.

The United States brought this action seeking to have the defendant property forfeited to the United States, on the theory that it was used by Richard DiLoreto, from the Spring of 1983 until 1986 or 1987, to store and sell cocaine. *See*, 21 U.S.C. § 881(a)(7). Title to the property is held by DiLoreto and his wife Jane as tenants by the entirety. The property contains apartments, one of which the DiLoretos used as their home until approximately July, 1986. Since that time the apartments have been rented out to others. In an opinion and order dated March 14, 1989, we rejected Jane DiLoreto's assertion of innocent ownership and ordered her interest in the property, as well as Richard's, forfeited to the United States. 708 F.Supp. 698. An appeal from that order of forfeiture is presently pending before the United States Court of Appeals for the Third Circuit.

Marquette Savings Association holds a mortgage on the property. The United States concedes that the mortgage is a valid lien on the property which preceded any alleged illegal use of the property. At the time the property was seized in April, 1988, the mortgage payments were current. Payments continued to be made by the DiLoretos, or on their behalf, through September, 1988. Since that time, no further payments have been made. The un-

paid balance on the property as of October 1, 1988 was $29,120.03. Since the time the property was seized, the United States, through an agent, has assumed the management and control of the property, and has collected the rents due and owing. The monies collected by the United States are held in an account for the management and maintenance of the property.

Having conceded the validity and priority of Marquette's lien on the property, the United States agrees to give priority to the satisfaction of that lien, in the event of a forfeiture and sale of the property. The United States, however, has indicated that it will refuse to pay any interest or costs which have accrued subsequent to the seizure in April, 1988. Marquette has moved for summary judgment, seeking an order that it is entitled to post-seizure interest and costs from the United States in the event that the forfeiture is upheld on appeal. Marquette also seeks to compel the United States to turn over to it all the rental monies currently being held, and for an order allowing Marquette to collect all further rent. Finally, Marquette seeks to proceed with forclosure proceedings on the property.[1]

### I. Post–Seizure Interest

In support of its position that it is not obligated to pay post-seizure interest, the United States relies on *United States v. One Piece of Real Estate, etc.,* 571 F.Supp. 723 (W.D.Tx.1983), and its progeny. In *One Piece,* the court reasoned that requiring the United States to pay post-seizure interest to a lienholder would allow the lienholder's interest in the property to grow at the expense of the government. The Court concluded that allowing such a diminution of the government's forfeited interest would be contrary to the holding in *United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890). The Supreme Court there held that the interest of the government is fixed as of the date of the illegal act. Therefore, the Texas District Court concluded that a lienholder is not entitled to interest or other charges that accrue after the date of seizure. *Accord, United States v. A Parcel of Real Property,* 650 F.Supp. 1534 (E.D.La.1987); *United States v. 8.4 Acres of Land,* 648 F.Supp. 79 (D.S.C.1986); *United States v. One Condominium Apartment,* 636 F.Supp. 457 (S.D.Fla.1986); and *United States v. All Interests of Severo E. Escobar,* 600 F.Supp. 88 (S.D.Fla.1984).

Marquette, however, does not come into court without its own case authorities. It cites to the only circuit court case of which we are aware, which addresses the question of whether a lienholder is entitled to collect post-seizure interest from the United States. In *In re Metmor Financial, Inc.,* 819 F.2d 446 (4th Cir.1987), the court rejected the reasoning of *One Piece,* concluding that the court in *One Piece* had misconstrued *Stowell.*

In *Stowell* the Supreme Court had also held that:

> the mortgage is valid as against the United States, and ... so far as concerns the real estate, the judgment of condemnation must be against the equity of redemption only.

*Stowell,* 133 U.S. at 20, 10 S.Ct. at 248. The *Metmor* court therefore notes that:

> It is this aspect of *Stowell,* ignored by the government, that is critical for our purposes. The case holds that, even though forfeiture occurred prior to the actual seizure, the government can succeed to no greater interest in the property than that which belonged to the wrongdoer whose actions have justified the seizure. Ackley purchased the property encumbered by Metmor's secured note, *with interest accruing.* His equity was subject to an obligation to repay the borrowed principal *and* to pay interest on the unpaid balance until all of the principal was repaid. The government now attempts to transform that note into one that is unsecured and interest free. Such a result would deprive Metmor of its stake in the forfeited property and

---

1. While an appeal in this case is presently pending before the Court of Appeals, we conclude that we retain jurisdiction to consider Marquette's motion as an ancillary matter which will have no impact on the resolution of the pending appeal.

would constitute a taking without due process.

. . . . .

The government's legally cognizable interest in the forfeited property is not diminished by *continuing payments to Metmor for the plain and simple reason that the government's "interest"* in the property entails an obligation to make continuing "interest" payments on the preexisting mortgage. The aspect of *Stowell* on which the Texas court relied relates only to *when* the government's interest attaches—not to the *nature* of that interest.

*Metmor,* 819 F.2d at 448–449, and 450. The *Metmor* court therefore, concluded that where a forfeited property is encumbered by a lien which encompasses a right to receive continuing interest payments, an innocent lienholder is entitled to collect from the government such interest as accrues until the principal is repaid. *Accord, United States v. Real Property in Sevier County, Tenn.,* 703 F.Supp. 1306 (E.D. Tenn.1988); *United States v. Real Prop. Titled in Name of Shashin, Ltd.,* 680 F.Supp. 332 (D. Hawaii 1987); and *United States v. All That Tract & Parcel of Land,* 602 F.Supp. 307, 313 (N.D.Ga.1985).

We have carefully reviewed all the relevant authorities and find ourself in agreement with that line of cases following the reasoning set out by the Fourth Circuit in *Metmor.* To conclude otherwise would be to allow the United States the benefit of an interest-free loan at Marquette's expense. That would be particularly disturbing in light of the fact that the United States has over the last few months, accumulated a substantial surplus of rent monies of several thousand dollars in its holding account for managing and maintaining the property. Where the United States is generating income from the properties it is particularly disengenuous for it to argue that it should not be required to pay the interest on the mortgage.

While we note that there is surplus income being generated from the property herein, we do not mean to intimate that our resolution of the post-seizure interest question necessarily depends on that fact. The United States can certainly protect itself in forfeiture actions, from paying out any great deal of its own money for interest on liens against real property. Where the property siezed is being used as a residence by the claimants or is otherwise being used by them, the United States can allow them to continue to occupy the premises (as we have often seen them do) on the condition that they keep the mortgage payments current, or at a minimum, keep the interest payments current. The claimants certainly have an incentive to do so anyway, in order to protect their own interests in the property should they prevail in their attempt to thwart the forfeiture. Where the payments are not being made by the claimants, the United States could rent the property, as is the case herein.

### II. Post–Seizure Attorney's Fees and Costs

■ In addition to seeking post-seizure interest, Marquette seeks to collect from the United States, its attorney's fees and costs in this action. Marquette relies on *Metmor* and its progeny as establishing that the United States is bound by all of the conditions and obligations of a mortgage. We cannot agree. Our holding herein as to post-seizure interest is based upon our conclusion that the right to continued interest payments is part and parcel of the lienholder's interest *in the property.* Our review of the relevant authorities convinces us that the United States must compensate the lienholder for his entire interest in the property at the time of seizure. Costs and fees do not enjoy the same status. They are not an interest in the property, but are rather merely expenses required to protect an interest.

### III. Collection of Rental Payments

■ Marquette also seeks to compel the United States to turn over to it all the surplus rental monies, and for an order allowing Marquette to collect all further rent. In support of its position, Marquette points to a specific provision in the mortgage which assigns all rents for the property to Marquette, should the DiLoretos

breach the terms of their mortgage. Just as with the attorney's fees and costs, however, that provision is not part of Marquette's interest in the property. It is simply a means of securing and protecting Marquette's interest should a default occur. The United States is merely bound to make Marquette "whole" for its interest in the property. The United States is not bound by the mortgage agreement to any particular manner of doing so. In any event, to compel the United States to turn over the rent monies would interfere with the right of the United States to possess and control the property pending a final determination by the court of appeals as to the forfeitability of the property. *See,* 21 U.S.C. § 881; 28 U.S.C. §§ 2409 & 2409a; *United States v. Real Property in Sevier County, Tenn.,* 703 F.Supp. 1306 (E.D. Tenn.1988); and *United States v. Real Prop. Titled in Name of Shashin, Ltd.,* 680 F.Supp. 332 (D.Hawaii 1987). If the property is ultimately deemed forfeited to the United States, any excess of rents over management and maintenance expenses would then become available to Marquette should the United States be unable, through a sale of the property or otherwise, to compensate Marquette fully for its interest in the property.

### IV. Institution of Foreclosure Proceedings

Similarly, the United States is not bound by any provisions in the mortgage agreement providing for the institution of foreclosure proceedings by Marquette. Such provisions provide only a remedy for Marquette and are not part of Marquette's interest in the property. Also, the institution of any foreclosure proceedings by Marquette would obviously interfere with the United States' right to possess and control the property pending the outcome of the foreclosure action.

### ORDER

AND NOW, this 14th day of July, 1989, for the foregoing reasons, IT IS ORDERED that:

1) Should this Court's order of forfeiture be upheld on appeal, Claimant Marquette shall be entitled to receive from the United States the unpaid balance of the mortgage at the time the DiLoretos defaulted, together with interest on that unpaid balance at the rate provided for in the mortgage note;

2) Marquette shall not be entitled to collect from the United States any post-seizure attorney's fees or costs; and

3) Marquette is not entitled during the pendency of the forfeiture action to collect any rent on the property, to institute any foreclosure proceedings, or to otherwise interefere in any manner with the United States' possession and control of the property.