**MONROE SAVINGS BANK, FSB, Plaintiff,**

v.

**Vincent CATALANO, Lena M. Catalano, and United States of America, Defendants.**

**No. CIV–89–0203T.**

United States District Court, W.D. New York.

April 2, 1990.

Harter, Secrest & Emery (Brian V. McAvoy, of counsel), Rochester, N.Y., for plaintiff.

Dibble, Wright & Lloyd, P.C. (Frank H. Lloyd, Jr., of counsel), Rochester, N.Y., for Vincent and Lena M. Catalano.

U.S. Atty's. Office (Charles M. Pilato, Asst. U.S. Atty., of counsel), Rochester, N.Y., for U.S.

## DECISION AND ORDER

TELESCA, Chief Judge.

Monroe Savings Bank, FSB ("Monroe") commenced this action to foreclose a mortgage it holds against a single family residence located at 789 Ayrault Road in Perin-

ton, New York (the "Property"). The property is owned by defendants Vincent and Lena M. Catalano (the "Catalanos"). The United States has seized the property and has brought a forfeiture proceeding, which is currently pending before this Court. *See United States v. The Premises and Real Property at 789 Ayrault Rd.*, No. 88–8747. Monroe now moves for summary judgment seeking a judgment of foreclosure. For the reasons discussed below, the plaintiff's motion for summary judgment is granted.

On July 5, 1984, Monroe financed the Catalanos' purchase of the property in exchange for a $65,000 mortgage. In the summer of 1988, the United States seized the property and subsequently brought an action in this Court to forfeit the property pursuant to 21 U.S.C. § 881(a)(7). Upon being served with a summons and complaint in the forfeiture action, Monroe filed a claim with the United States based upon its mortgage lien against the property. Thereafter, the United States and Monroe entered into a written stipulation which provides in pertinent part:

2. United States of America recognizes [Monroe's mortgage] lien against the subject premises as superior to all and any claims of the United States of America.

3. [Monroe] ... elects to permit said forfeiture action to proceed to judgment with the understanding that should the United States of America prevail in this forfeiture, the [Catalanos'] property is to be disposed of by the United States Marshal's Service ... To the extent that said sale does not result in a sum sufficient to pay any and all of ... [Monroe's mortgage] lien, the lien shall continue to remain a first and superior lien in all respects to the claims of the United States of America ...

6. Upon full payment of said mortgage as provided in paragraph 3 above, ... [Monroe] acknowledges that all their right, title and interest in ... [the Catalanos'] property is thereby extinguished ... It is further agreed that if an order of forfeiture is granted in this action, it will expressly provide for full payment of ... [Monroe's mortgage] as set forth above.

Stipulation and Order of Nov. 4, 1988 (No. 89–203T).

Soon after the United States commenced this forfeiture proceeding, the Catalanos defaulted on their mortgage. Since no attempt was made to cure the default, and since the United States had asserted a claim against the property, Monroe commenced this foreclosure action pursuant to 28 U.S.C. § 2409a. Although the defendants do not contest the validity of Monroe's mortgage, they do dispute the bank's right to foreclose. The Government additionally claims that this Court lacks jurisdiction to entertain this motion with respect to the Government's interest. Given its threshold nature, I will consider the Government's jurisdictional objection first.

## DISCUSSION

### Jurisdiction

Sections 1346(f) and 2409a of Title 28 grant the district courts original jurisdiction over civil actions to quiet title to real property in which the United States claims an interest. Taken together, these provisions "cast[ ] a wide jurisdictional net" and extend to a "variety of suits besides the typical quiet title action," *United States v. Bedford Associates*, 657 F.2d 1300, 1316 (2nd Cir.1981), *cert. denied*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982), including those involving simultaneous forfeiture and foreclosure proceedings, *United States v. Real Property in Sevier Cty., Tenn.*, 703 F.Supp. 1306 (E.D. Tenn.1988); *United States v. Real Property Titled in the Name of Shashin, Ltd.*, 680 F.Supp. 332 (D.Haw.1987) (hereinafter *"Shashin"*). Indeed, as the Second Circuit held in *Bedford Associates*, § 2409a (and § 1346(f)) confer jurisdiction over property interests asserted by the United States whenever, as is the case here, that interest is "adverse" to that of the plaintiff. 657 F.2d at 1316. Accordingly, the Government's interest is properly the subject of this court's jurisdiction.

*Summary Judgment with Respect to the Catalanos*

■ By its own terms, Monroe's mortgage provides that it may foreclose on the property in the event of default. While the Catalanos admit that they have failed to make any payments since August 1988, they claim that they were relieved of their mortgage obligation when the Government wrongfully seized the property.[1] I find such a defense to be without merit.

It is well settled in New York that a mortgagee cannot be denied relief provided for under a mortgage because of conditions or circumstances not attributable to the mortgagee. "[A] mortgagor is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of waiver *by the mortgagee,* or estoppel, or bad faith, broad, oppressive or unconscionable conduct on the latter's part." *Nassau Trust Co. v. Montrose Concrete Products Corp.,* 56 N.Y.2d 175, 183, 451 N.Y.S.2d 663, 436 N.E.2d 1265 (1982) (emphasis added) (quoting *Ferlazzo v. Riley,* 278 N.Y. 289, 292, 16 N.E.2d 286 (1938)); *see also Gratton v. Dido Realty Co., Inc.,* 89 Misc.2d 401, 403, 391 N.Y.S.2d 954 (1977), *aff'd,* 63 A.D.2d 959, 405 N.Y.S.2d 1001 (1978) (in the absence of an estoppel or oppressive and unconscionable acts by plaintiff, the Court is duty bound to enforce the mortgage as written by the parties). Although these conditions will relieve the mortgagor from default, each requires some provisional language in the mortgage or some misconduct by the mortgagee to bar foreclosure. Absent such allegations here, the fact the United States has seized the property does not relieve the Catalanos of their mortgage obligation. Monroe is thus entitled to summary judgment against the Catalanos.

*Summary Judgment with Respect to the Government*

■ The Government argues initially that Monroe cannot force a mortgage foreclosure on real property which is subject to a pending forfeiture proceeding by the government. I disagree. Although the Government's current possession of the property certainly accords it some rights, its interest in the property is necessarily delimited by, and subordinate to, Monroe's bona fide interests which existed prior to *the prohibited conduct.*

The Government's interest in the property is predicated upon 21 U.S.C. § 881(a)(7), which subjects to forfeiture all real property used in the commission of a controlled substance felony. That provision provides, however, that "no property shall be forfeited under this paragraph ... to the extent of an [innocent owner's] interest." This mitigating language, in effect, codifies the long-standing principle first established in *United States v. Stowell,* 133 U.S. 1, 20, 10 S.Ct. 244, 248, 33 L.Ed. 555 (1890), that forfeiture entitles the Government "to no greater interest in the property than that which belonged to the wrongdoer whose actions justified the seizure." *In re Metmor Financial, Inc.,* 819 F.2d 446, 448–49 (4th Cir.1987). The purpose of the "innocent owner" provision is simply to ensure that "bona fide parties" holding an interest in property have an opportunity to show that illegal drug activity was committed without their knowledge or consent. *Id.* at 449 (citing testimony of Rep. Rogers and Sen. Nunn, 124 Cong.Rec. 36,946, 23,057 (1978))[2]; *Shashin,* 680 F.Supp. at 334. Once a bona fide party satisfies its burden of proof, the Government takes subject to both the nature and extent of that party's rights in the property.[3] *Metmor,* 819 F.2d

---

**1.** The Catalanos apparently used the land at 789 Ayrault Road as rental property. In their answer, the Catalanos claim that the Government denied their petition to continue renting the property pending the outcome of the forfeiture action. *Since the time of the seizure, the property* has remained unoccupied and under the control of the United States Marshal's Service.

**2.** This testimony, although part of the legislative history of § 881(a)(6), clearly applies with equal

force to the identical "innocent owner" language contained in § 881(a)(7).

**3.** I am well aware that the administrative practice prior to these provisions was to deny innocent mortgagees any post-seizure interest. Like the Fourth Circuit in *Metmor,* however, I do not find this fact to somehow suggest that Congress intended these forfeiture statutes to undermine the fundamental rights of those bona fide parties who hold an interest in the subject property.

at 449. Any other result would amount to a taking without due process. *Id.; United States v. Real Property At 4492 South Livonia Rd.,* 889 F.2d 1258, 1264–65 (2nd Cir.1989).

The Government does not dispute that Monroe had a pre-existing mortgage on the property, and that the bank neither consented to nor knew of any illegal activity associated with the property. Accordingly, Monroe is entitled to a judgment establishing its rights as an innocent mortgagee. By the very nature and terms of its mortgage agreement, those rights necessarily include the right to foreclose on the property if the debt is unpaid. Callaghan, *Mortgages and Mort. Foreclosure N.Y.* § 1:2, at 2 (rev. ed. & Supp.1989) ("mortgage" necessarily imports right of foreclosure); *but see United States v. Parcel of Real Property Known as 708–710 W. 9th St.,* 715 F.Supp. 1323, 1327 (W.D.Pa.1989) (foreclosure provisions only remedial and therefore not part of mortgagee's property interest). To hold otherwise would effectively transform Monroe's mortgage into an unsecured and interest-free loan and thereby eviscerate its interest in the property. As discussed above, such a result would amount to an impermissible "taking" under the Fifth Amendment. *Metmor,* 819 F.2d at 449; *Parcel of Real Property Known as 708–710 W. 9th St.,* 715 F.Supp. at 1326. Accordingly, Monroe is entitled to exercise its right of foreclosure subject only to certain restrictions imposed by § 2409a(b).

■ Under § 2409a(b), the Government possesses a circumscribed right of election whenever, as here, it is presently in the possession of property. Section 2409a(b) provides in pertinent part:

*But see United States v. Certain Real Property Known As Gulfstream W., 2600 Harden Blvd., Lakeland, Polk Cty., Fla.,* 710 F.Supp. 792, 794–797 (S.D.Fla.1989). Aside from the constitutional question raised by such a "taking," the legislative history behind the innocent owner language makes clear that it was intended to protect and indeed "expand[ ] the rights of innocent parties." Testimony of Rep. Rogers, 124 Cong.Rec. 36,946 (1978).

the United States ... [may] not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days; and if the final determination shall be adverse to the United States, ... *[it] nevertheless may retain such possession or control of the real property or any part thereof as it may elect, upon payment to the person determined to be entitled thereto ... an amount which ... the District Court ... shall determine to be just compensation for such possession or control.* 28 U.S.C. § 2409a(b) (emphasis added).

Pending an appeal, the Government therefore has the option under § 2409a(b) of either releasing the property to Monroe for foreclosure, or retaining the property and compensating Monroe to the extent of its interest. *Cf. Shashin,* 680 F.Supp. at 335 (Government's election may occur after resolution of forfeiture proceeding).

■ This manner of disposition fairly accommodates the competing interests of both parties. Should the Government elect to release the property for foreclosure, forfeiture will entitle it to the proceeds from any subsequent sale to the same extent as the mortgagors. *See Mortgages & Mort. Foreclosure N.Y.* § 27:1, at 588. Alternatively, if the Government opts to pay Monroe and take assignment of the mortgage, it could foreclose on the mortgage and recoup its losses even should it fail to obtain a judgment of forfeiture.[4]

I am unpersuaded by the Government's argument that such a resolution will deny it any financial benefit from its forfeiture proceeding and thereby undermine the poli-

4. The Government may avoid such lump sum payments in the future by either making the mortgage and interest payments as they accrue, or by allowing the mortgagor to occupy the premises on the condition that it keep those payments current. *See Parcel of Real Property Known as 708–710 W. 9th St.,* 715 F.Supp. at 1326 (right to continued mortgage and interest payments from Government during course of forfeiture proceedings "is part and parcel of lienholder's interest *in the property* ) (emphasis in original).

cies of the forfeiture statutes. The primary purpose of these statutes is to deprive narcotic peddlers of the operating tools of their trade, and not, as the Government argues, to boost the Federal treasury. *See United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H.1974); *Certain Real Property Known as Gulfstream West,* 710 F.Supp. at 794; *cf. Metmor,* 819 F.2d at 450 n. 7. A broader policy, such as that suggested by the Government, would run afoul of the Fifth Amendment to the extent it permitted the Government to deprive innocent parties of their interests in property.

*Monroe's Purported Contractual Waiver Of Its Right To Foreclose:*

■ The Government nonetheless argues that Monroe waived and/or subrogated its rights to foreclose by agreeing "to permit ... the forfeiture action to proceed to judgment with the understanding that should the United States prevail in th[e] forfeiture, the defendant property is to be disposed ... according to law." Stipulation and Order of Nov. 4, 1988, at ¶ 3. Monroe argues that it did not intend by this language to waive any of its rights under the mortgage and that the purpose of the stipulation was simply to relieve it from any obligation to appear and participate in the forfeiture action in which Monroe had been named a defendant. Affidavit of Brian McAvoy, at ¶ 7.[5]

Under New York law, contractual intent poses a triable issue of fact only when the contractual provision in question is ambiguous. *International Klafter Co. v. Continental Casualty Co.,* 869 F.2d 96, 100 (2d Cir.1989); *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2nd Cir.1987); *Teitelbaum Holdings, Ltd. v. Gold,* 48 N.Y.2d 51, 56, 421 N.Y.S.2d 556, 396 N.E.2d 1029 (1979). Such is not the case here. According to the express terms of the stipulation, the United States recognized Monroe's superior right to both the property and any attendant proceeds

received upon sale. Nowhere in the agreement is there any suggestion that Monroe intended to waive its right to foreclose nor is such a construction reasonable. Monroe is therefore entitled to summary judgment with respect to the Government as well.

ALL OF THE ABOVE IS SO OR-DERED.

---

5. Mr. McAvoy argues that during his negotiations with the Government, he requested explicit language by which the United States would recognize Monroe's right to commence foreclosure proceedings. The Government did not agree to the inclusion of such language and Mr. McAvoy alleges that he subsequently made it clear that Monroe would not release or waive its right to foreclose its mortgage if it deemed it necessary. McAvoy Aff., ¶ 8.